Syllabus.

TRUSTEES OF NEW CASTLE COMMON, defendant below, plaintiff in error *vs.* JABEZ FRANK MEGGINSON, late Collector of Taxes for New Castle Hundred, plaintiff below, defendant in error.

1.   A gift of land to trustees "for the use of the inhabitants of the town of New Castle," is a charitable trust or use.

2.   A gift of land to a corporation created for the purpose of administering a trust of a gift of, land "for the use of the inhabitants of the town of New Castle," is a gift to "a corporation for charitable uses."

3.   Gifts to and for a general public use or for lessening the burdens of Government are charitable trusts; are not within the prohibition of the rule against perpetuties; and are valid and will be enforced and administered by the Court of Chancery.

4.   The words "charitable uses" include all gifts for a general public use, independent of benevolence, educational or religious purposes.

5.   The particular uses to which the trust property is in fact put  is not material in deciding whether a particular trust is a charitable one.

6.   Where a statute exempts from taxation property "belonging to any corporation for charitable uses" properly donated to trustees for a. charitable use and afterwards vested in a corporation enacted by special. Act to administer that particular trust, is property belonging to a corporation for charitable uses and is exempt from taxation.

7.   Gifts in trust for the support of the public schools for municipal improvements and for  gifts to needy persons of  a town,   are gifts for. charitable uses.

(*June* 21, 1910.)

CURTIS, Chancellor, PENNEWILL, Chief Justice and Associate Judges CONRAD, WOOLLEY and HASTINGS sitting.

*John H. Rodney, Francis deH. Janvier* and *Richard S. Rodney* for plaintiff in error.

*Sylvester D. Townsend, Jr.,* and *William G. Jones, Jr.,* for defendant in error.

Supreme Court, January Term, 1909.

WRIT OF ERROR to Superior Court, for New Castle County.

Action by Jabez Frank Megginson, late Collector of Taxes for New Castle Hundred, against the trustees of New Castle Common.   Judgment for plaintiff, and defendant brings error. Reversed, and judgment entered for defendant.

The case in the Court below was an amicable action of assumpsit upon a case stated, of which the following is a copy, the immaterial parts being omitted:

And now to-wit this tenth day of July, A. D. 1907, it is agreed by and between the attorneys, for the plaintiff and the defendants in the above stated cause, that the following case be stated for the opinion of the Court, in the nature of a special verdict, either party to have the right to sue out a writ of error   on the judgment to be entered in the cause.

### STATEMENT OF FACTS.

That the above named plaintiff was the collector of taxes for New Castle Hundred in the year  1903, duly appointed by the Levy Court of New Castle County, and as such collector authorized, empowered and directed to collect the taxes assessed upon and against the property of the above named defendants.

That William Penn, Proprietary and Governor of the Province of Pennsylvania and the Counties annexed, in the year A. D. 1701, made a certain warrant directed to Edward Pennington, Surveyor General of the Province of Pennsylvania and Territories in the following words, to-wit:

"William Penn, Proprietary and Govr. of the Province of Pennsylvania and Counties annexed.

Pennsylvania

(L. S.)

"For the accommodation of the Inhabitants of the Town of New Castle   These are to require thee forthwith to survey or cause to be surveyed to the only use and behoof of the said Inhabitants to lie in Common one thousand acres of Land adjoining or near to the said Town hitherto reputed called New Castle Com-

mon in one convenient Tract, and if there proved more than the sd. number of Acres lay out the residue in one convenient piece to me and for my use and make returns thereof into my Secretary's office.   Given under my hand and seal at New Castle the 31st day of 8ber 1701.

Wm. Penn."

"To Edward Pennington, Surveyor General of the Province of Pennsylvania and Territories."

That by virtue of a warrant directed to George Dakeyne, Surveyor, bearing date the twenty-third day of the tenth month, 1701, commanding him to survey and lay out to the inhabitants of New Castle to lie in common for their accommodation and to their only use and behoof, 1000 acres of land adjoining or near to the town of New Castle reputed always to be common and to make return of the same unto the General Surveyor's office at Philadelphia that he had resurveyed said tract of land, and that the same contained 1068 acres.

That Thomas Penn and Richard Penn absolute Proprietaries and Governors in Chief of the Counties of New Castle, Kent and Sussex on Delaware and Province of Pennsylvania by their Charter dated October 31st, 1764, under the hand of John Penn, Esq., Lieutenant Governor and Commander in Chief of the Counties of New Castle, Kent and Sussex on Delaware and Province of Pennsylvania and the Great Seal of the Government of said Counties, (which said Charter recited that in pursuance of said warrant of said William Penn, there was surveyed and laid out on the tenth day of April, A. D. 1704, to the inhabitants of the town of New Castle in the County of New Castle, a tract or parcel of land adjoining or near to the said town containing 1068 acres, as and for a common, for the use, behoof and accommodation of the inhabitants of said town of New Castle; that the inhabitants of said town had represented to said Proprietaries and Governors that, notwithstanding said warrant and survey and the many benefits and advantages the said William Penn had intended the

Statement of Facts.

inhabitants of said town should reap and enjoy great quantities of said land, surveyed as a common, had been enclosed by the owners of tracts of land lying contiguous thereto and by them tilled and cultivated and that the said inhabitants were remediless for want of legal power to sue and implead the wrong-doers; and that the said inhabitants had requested the said Proprietaries and Governors to incorporate a certain number of them and give them perpetual succession and confirmed to them the said tract of land in common for the use of all the inhabitants of the said town), favoring the request of said inhabitants, nominated, constituted and appointed thirteen trustees in said charter named wherein and whereby said trustees and their successors were in corporated as one body corporate and politic by the name of "Trustees of New Castle Common" and by such charter said trustees and their successors forever became seized of all the aforesaid tract or parcel of land, together with all the woods, waters, pastures, feedings, ways, rights, privileges, advantages and appurtenances whatsoever thereunto belonging or in anywise appertaining; to have and to hold said tract of land with the appurtenances unto the said Trustees and their successors, in trust nevertheless and to and for the uses, intents and purposes following, that is to say: to and for the use of the present inhabitants of the said town and those who shall hereafter become and be inhabitants of the said town of New Castle and dwelling within the bounds and limits thereof as a Common forever, and to no other use, intent or purpose whatsoever. To be holden of the said grantors their heirs and successors, Proprietaries of the said Counties of New Castle, Kent and Sussex on Delaware, in free and common socage, by fealty only, in lieu of all other services; with the proviso that said Trustees or said successors, shall not have nor shall be deemed or construed to have any right, power or authority to grant, bargain, sell, alien, convey, release, or confirm the hereby granted premises or any part thereof to any person or persons whatsoever; but that the same shall be and remain and be held and enjoyed by them for the use of a common for the inhabitants of the town of New Castle and to no other use, intent or purpose whatsoever; and further provided

that if the said Trustees or their successors shall at any time grant, bargain or sell the said tract of land or any part thereof or dispose of the same to any other use than that of the common for the inhabitants of the said town of New Castle or its said Trustees shall by any means be dissolved, then the grant so made shall cease and determine and become absolutely void to all intents and purposes whatsoever, and all and singular the granted premises with the appurtenances shall revert to the said Thomas Penn and Richard Penn, their heirs and assigns forever;

That John Penn, of Stoke Pogis, in the County of Bucks, and John Penn, of Dover Street, in the County of Middlesex, (heirs at law of Thomas Penn and Richard Penn, aforesaid and reversioners under the deed made by them,) late Proprietaries and Governors of Pennsylvania in America, by their deed dated July 7th, A. D. 1791, (wherein it was recited that Thomas Penn and Richard Penn, who in their lives were absolute Proprietaries and Governors in Chief of the Counties of New Castle, Kent and Sussex on Delaware and Province of Pennsylvania, by charter dated October first, A. D. 1764, did grant and convey unto thirteen trustees, the hereinbefore mentioned tract of land as and for a common, for the use, behoof and accomodation of the inhabitants of the town of New Castle, which tract in pursuance of a warrant from William Penn was surveyed and laid out April 10th, A. D. 1704, for the uses aforesaid; and wherein it was recited further that the restrictive terms of said grant do now prevent the inhabitants of said town of New Castle from deriving all those benefits and advantages which would result from a free and absolute grant thereof; and that the said last mentioned Trustees of said Common have solicited the said last mentioned grantors to grant the free and absolute property of, in and to the said premises, to them and their successors, to and for the use of the inhabitants of the said town of New Castle, and that the said last mentioned grantors were willing to promote the prosperity of said town and desired to benefit the descendants of the inhabitants of the said town for the regard, honor and respect always exhibited on the part of the predecessors of said inhabitants to the

ancestors of said grantors), granted, bargained and sold unto Isaac Grantham, Robert Clay and William Lees and to the survivors of them, all the aforesaid tract or parcel of land, with the appurtenances to have and to hold the same with the appurtenances to the said Isaac Grantham, et al., the survivor and the heir of the survivor of them, to and for the use and behoof of the said Isaac Grantham, et al., and the survivor and heirs of the survivor, forever in trust, nevertheless, to and for the use, benefit and behoof of the inhabitants of the town of New Castle to be conveyed, transferred and set over by the said Isaac Grantham, et al., or by the survivor or heirs of the survivor, in trust, unto the present or future trustees of said tract and their successors or of such future trustees and their successors as may be chosen or appointed by virtue of an act of incorporation when the same may be passed by an Act of General Assembly of the State of Delaware to and for the use and behoof of the inhabitants of the said town of New Castle forever to be appropriated in such manner as a majority of the Trustees in their wisdom may direct, provided that nothing herein contained shall vest the trustees of said commons with any power or authority to sell the same or any part thereof;

That the General Assembly of the State of Delaware on the 26th day of January, A. D. 1792, passed an Act purporting to enlarge the corporate powers of the Trustees of the New Castle Common,which said Act purported to provide that the Trustees of said tract be incorporated as one body politic and corporate by the name and style of "Trustees of New Castle Common," and that said Trustees of New Castle Common should be able and capable in law and equity, to have, purchase, take, accept, receive, possess, enjoy and retain to them and their successors all of said tract of land and the same or any part thereof to grant, demise and dispose of for the use of the inhabitants of said town of New Castle to be appropriated in such manner as a majority of the said Trustees in their wisdom may direct, provided always that they reserve for the benefit and use of the inhabitants of said town, an annual or other rent, as a reasonable equivalent for the leasing or disposing of the before described tract, and that

neither of said Trustees nor their successors shall be empowered to sell the said tract of land or any part thereof nor lease or otherwise dispose of the same for a longer term than thirty years.

That the said Isaac Grantham, et al., in pursuance of the trust by them held did by their deed dated July 30th, A.D. 1792, convey to David Finney, et al., Trustees of the New Castle Common, the said tract of land, to have and to hold the same in trust to and for the special uses, intents and purposes and under and subject to the proviso mentioned and described in the before mentioned deed of John Penn of Stoke Pogis and John Penn of Dover Street and in the said mentioned Act of General Assembly; that the said lands herein mentioned and referred to are still held by the defendants, the successors of the original trustees, by virtue of said charter and the various deeds and Act of Assembly.

That the net income, rents and profits arising from the said premises has been exclusively used and expended by the said Trustees of New Castle Common for the use, benefit, and behoof of the inhabitants of the said town of New Castle in the support of public schools, public improvements and charitable donations and gifts; and only for the inhabitants of the said town generally.

That the said lands in accordance with the provisions of the statute in such cases made and provided, were duly assessed by the Assessor of real estate for New Castle Hundred for the year 1901; that the said assessment was duly returned to the Levy Court of New Castle County and thereupon in accordance with the statute in such cases made and provided the Levy Court of New Castle County proceeded to levy and assess a tax on the said premises based upon said valuation;

That in pursuance of said assessment a warrant and duplicate was duly made out and given to Jabez Frank Megginson, Collector of Taxes as aforesaid, wherein and whereby he was authorized and directed to levy and collect from the Trustees of New Castle Common, the defendants, and the property owned and possessed by them assessed as aforesaid, the sum of five hundred and twenty-two and 12-100 dollars being the taxes for the year A. D. 1903; that the said plaintiff the Collector as aforesaid has

made demand for the payment of the taxes so assessed which said payment has been refused by the defendant and the said tax for which this suit is instituted still remains unpaid.

The said defendant claims that the said premises are exempt under the provisions of *Chapter* 11, *of the Revised Code*, and that it is a corporation for a charitable use and that under the provisions of said chapter, the real estate so held by it is not  liable to the assessment and collection of County Taxes.

If the Court should be of opinion that the said property is exempt from assessment and tax by the Levy Court of New Castle County for County purposes under the provisions of  the said statute, then judgment shall be entered for the defendant and with costs of the suit; otherwise for the plaintiff for the sum of $522.12 and costs of suit.

Afterwards, in the Superior Court, the following opinion was  rendered:

"Dec. 13, 1907: The case stated and the arguments in this case having been carefully considered, the Court is of the opinion that "The Trustees of New Castle Common," the defendant, is not a corporation for charitable uses within the meaning of *Section* 1 *of Chapter* 11 *of the Revised Code;* that the property mentioned in the said case stated is not used for charitable purposes within the meaning of said section; that the net income, rents and profits arising from the said property are not used and expended for charitable purposes within the meaning of said section, but for such purposes as are the moneys raised and collected by municipal taxation; and that the said property is not exempt from assessment and taxation for county purposes, under the provisions of the said section.

"It is therefore ordered that judgment be entered in favor of the plaintiff and against the defendant for the sum of five hundred and twenty-two dollars and twelve cents and costs of suit."

The assignment of error is in general terms that the Court below erred in the judgment entered for the plaintiff.

CURTIS, Chancellor, delivering the opinion of the Court:

The case is before this Court on a writ of error to the Superior Court for New Castle County, and was an amicable action heard there on a case stated. The plaintiff was the collector of County taxes for New Castle Hundred, and claimed that land held by the defendant, The Trustees of New Castle Common, was liable to the payment of the tax levied against it for the year 1903, amounting to $522.12, while the defendant claimed that the premises are exempt from taxation as being the property of a corporation for charitable uses. In the agreement for docketing the amicable action the facts are fully set forth. As appears from the statement, William Penn in the year 1701 directed that "For the accommodation of the inhabitants of the town of New Castle," one thousand acres of his land be surveyed "to the only use and behoof of the said inhabitants to lie in common," and this survey having been made, the legal title to the land was by deed of the then Proprietaries of Pennsylvania conveyed to certain trustees and thereafter by them conveyed to the defendant, The Trustees of New Castle Common, a corporation created by the General Assembly of Delaware in 1792 to take title to the commons "for the use of the inhabitants of the town of New Castle." The corporation was empowered by the charter to lease but not to sell the land, and appropriate the moneys in such manner as the trustees should in their wisdom direct. By the agreed statement of facts the net income has been used for the use of the inhabitants of the town of New Castle exclusively in the support of public schools, public improvements and charitable donations and gifts and for the inhabitants of the town generally.

The statute under which the exemption from taxation is claimed is an Act passed in 1796, published in the *Revised Code* as *Chapter XI, sec tion* 1, *page* 114, as follows:—

"All real and personal property, not belonging to this State, or the United States, or any county, church, religious society

college or school, or to any corporation for charitable uses, shall be liable to taxation and assessment for public purposes. (Provided, that legacies for religious, charitable and educational purposes, shall not be subject to taxation.)"

In the Superior Court it was held:

"The defendant is not a corporation for charitable uses within the meaning of *Section* 1 *of Chapter* 11 *of the Revised Code;* that the property mentioned in the said case stated is not used for charitable purposes within the meaning of said section; that the net income, rents and profits arising from the said property are not used and expended for charitable purposes within the meaning of said section, but for such purposes as are the moneys raised and collected by municipal taxation; and that the said property is not exempt from assessment and taxation for County purposes, under the provisions of the said section."

On December 13, 1907, judgment was found for the plaintiff and upon this judgment the writ of error was taken to this Court.

It will be seen from the above that the property taxed is owned by a corporation created for the sole purpose of administering the particular trust respecting this land and no other property, and the sole question is whether this trust was a charitable use. The trustees were limited in their use of the income of the property to such objects as were for the use, benefit and advantage of the inhabitants of the town, and in fact made such use of them. They had no power to undertake any other trust respecting any other property and were and are subject to supervision as other trustees respecting their administration of the trust. The question for decision is a very narrow one. Did the gift by William Penn constitute a charitable use or trust within a proper definition thereof as settled by precedents? The question may be more broadly stated thus: Is a donation of land to trustees for the use and benefit of the inhabitants of a certain town a charitable use or trust?

Turning first to the decisions of our own Courts, we find that in Delaware charitable trusts have been considered by the

Courts in several cases.  Benjamin Potter, by will, gave part
of his real estate to named trustees "to and for the support,
maintenance and education of the poor white citizens of Kent
County generally."  This gift was upheld as a charitable use
and enforced by the Court of Chancery.  In *State vs. Griffith*,
2 *Del. Ch.* 392, Chancellor Johns held that the jurisdiction to
protect and enforce charitable uses was vested in the Court
of Chancery in England prior to the *Statute of* 43 *Elizabeth,
Chapter* 4, and was not founded on that statute, and that the
Court of Chancery of the State of Delaware is vested with like
jurisdiction, independent of that statute.  Also that uncer-
tainty as to the individual beneficiaries until  appointment,
or selection, by the trustee, or other designated agents, was
a characteristic of charitable trusts and that such uncertainty
did not therefore invalidate the gift under the Potter will.  *These*
conclusions were affirmed by the Court of Errors and Appeals in
an appeal taken from Chancellor Johns' decree, in *Griffith vs.
State*, 2 *Del. Ch.* 421, *Appendix*.  Both Courts held that the rule
of law against perpetuities did not apply to that or any other
charitable or public trust or use.  Later the Court of Errors and
Appeals, in *Tharp vs. Fleming*, 1 *Houst.* 593, affirmed a decree of
Chancellor Johns restraining the sale of the Potter land by Com-
missioners created by an Act of the General Assembly for that
purpose, and held that the Legislature had no power to authorize
the sale.  Afterwards at the request of Chancellor Saulsbury,
Nathaniel B. Smithers, Esq., prepared an opinion as to the power
of the Court of Chancery to order a sale of the  land  upon ap-
plication of the trustee for sufficient reasons, and advised the
Chancellor that such power was vested, in the Court of Chancery
as part of its inherent jurisdiction over the administration of
charitable estates.  The learned *amicus curiae* adopts the
following language of *Shelford on Mortmain* in defining a  public
charity:

"Public charities are hardly distinguishable from private;
the charter of the Crown does not make a charity more or less
public, but only more permanent than it otherwise would be;

but it is the *extensiveness* which will constitute it a public one. A devise to the poor of a parish is a public charity."

This opinion of Mr. Smithers is reported in the *Appendix to Vol.* 8 *of Delaware Chancery Reports*. In *Doughten vs. Vandever*, 5 *Del. Ch.* 51 (1875), Chancellor Saulsbury was called on to construe the will of Amy Doughten, where there was ambiguity in the identification of the legatees, because of the indefiniteness of the corporate name of the beneficaries, though the will made clear the use to which the legacies were to be put. One of the gifts was of a part of the residue "To the Trustees and Managers of the Philadelphia Waterworks  *  *  *  to be applied to the benefit of the said institution or corporation." This gift the Chancellor declared invalid, holding that it was not good at common law because there was no such corporation as that named in the will, the title to the waterworks of Philadelphia being in the City of Philadelphia, and it was not valid in equity because it was not a public charity. The Chancellor distinguished *Jones vs. Williams Amb.* 651, which was a gift in trust to bring in spring water to a town and keep the plant in good order. It is not important to consider whether the distinction was well taken, but it is of importance that Chancellor Saulsbury approved of *Jones vs. Williams*, and adopted as his own the definition of Justice Gray, in *Jackson vs. Phillips*, hereinafter quoted. Gifts to general public uses and for lessening the burdens of government are clearly recognized by Chancellor Saulsbury as charitable trusts or uses. From these decisions in the Delaware Courts it may be concluded that the Statute of Elizabeth was not the origin of charitable uses and is therefore not controlling in its designation of certain gifts as being public, charitable trusts, but rather as illustrative of what objects should be so considered; that the uncertainty of the beneficiaries is a characteristic of such benefactions; that they are not within the prohibition of the rule against perpetuities; and that any gifts to and for a general public use or lessening the burdens of government are valid as charitable trusts and uses.

It is obvious that the word "charitable" implies primarily a donation to the poor, the sick, or the needy. But it undoubt-

edly has been given a much wider definition, as thus stated in *Perry on Trusts, Vol. 2, Sec.* 687:

"Charitable trusts include all gifts in trust for religious and educational purposes in their ever varying diversity; all gifts for the relief and comfort of the poor, the sick and the afflicted; and all the gifts for the public convenience, benefit, utility or ornament, in whatever manner the donor desires to have them applied."

This broad meaning the word "charity" had in 1796, the time when the exemption Act in question was passed.   Trusts for public purposes independent of benevolence, educational or religious purposes were held to be charitable trusts many years before the Act was passed.   In 1592 a gift to support bridges and highways was held by Lord Coke to be a public and charitable gift in *Porter's Case,* 1 *Coke* 26.   The case of *Jones vs. Williams, supra,* was decided in 1767, wherein Lord Camden held that a gift of money to be applied by trustees for bringing spring water into a town by pipes and for keeping the plant in repair was a charitable trust, and there gave the oft quoted definition of a charitable use, which has survived to this day as the one comprehensive one, viz.: "A gift to a general public use which extends to the poor as well as to the rich."   The statute of Elizabeth itself furnishes material for a definition, though it was not an all inclusive statute.   It recited that moneys had been given in trust for certain objects, naming them, and that there had been abuses of trusts, and empowered certain officers to investigate and correct these abuses.   It may well be said, therefore, that it does not define charity, or exclude as not charitable all objects not named therein; but the enumerations therein are illustrative of the trusts in which abuses existed.   As was said by Sir John Leach, in *Atty. Gen. vs. Heclis,* "It is not material that the particular public or general purpose is not expressed in the *Statute of Elizabeth,* all other legal public or general purposes being within the equity of that Statute."   But it should be noted that this *Statute of* 43 *Elizabeth, c.* 4, commonly called the *Statute of Charitable Uses,* passed in 1601, includes in the enumeration of

charitable objects and purposes, to which it relates, gifts for public purposes, where benevolence is not an element. The statute includes existing trusts for "repairs of bridges, ports, havens, causeways, churches, sea banks and highways." All these are public works such as municipalities construct and maintain for the general comfort, convenience or utility of the particular country. Such also would be municipal buildings, parks and museums. If a trust to provide repairs for highways or bridges be charitable uses, so also, in principle, would a trust to make highways, or build bridges, be charitable uses. It may safely be asserted, therefore, that both by the adjudged cases cited and others that might have been cited, and by the *Statute of Elizabeth*, at the time the exemption Act in question was passed, the word "charity" had a well known and acknowledged meaning, broad enough to include every gift for a general public use. Such definition must therefore be read into this statute in deciding this case. Where a statute uses a word which is well known and has a definite sense at common law, or in the written law without defining it, it will be presumed to be used in that sense and will be so construed. *Sutherland on the Construction of Statutes*, *Sec*. 398. In addition, however, there are many cases decided in England and in this Country which sustain this interpretation of the word "charitable."

The following are illustrations of this numerous class of cases establishing as charitable trusts gifts for public purposes, independent of benevolent, educational or religious purposes: A trust "for purposes conducing to the good of the County of W. and the parish of L. especially." *Atty. Gen. vs. Lonsdale*, 1 *Sim*. 105. For the improvement of a specified town. *Atty. Gen. vs. Heelis*, 2 *Sim. & Stu.* 67; *Howse vs. Chapman*, 4 *Ves*. 542. Gifts to discharge a tax on a commonalty. The tax no longer existed but the Chancellor held it a charity to relieve the whole community of a tax due from it, and directed that a scheme be devised for using the income of the fund for the benefit of the whole community. *Atty. Gen. vs. Bushley*, 24 *Beav*. 290. A gift for the advantage and benefit of Great Britain. *Nightingale vs. Goul-*

*bourn*, 5 *Hare* 484 (2 *Phil*. 594). Gifts to pay part of the national debt. *Ashton vs. Langdale*, 4 *Eng. L. & Eq.* 139; *Newland vs. Atty. Gen.*, 3 *Mer.* 684 (1809). A gift of real estate, the profits to be used for repairing certain highways, held to be a valid charitable trust. *Collison's Case, Hob.* 136. A trust to build a bridge or life boat for a town. *Johnson vs. Swann*, 3 *Madd.* 457; *Forbes vs. Forbes*, 23 *Eng. L. & Eq.* 335. Money to be applied to "charitable, beneficial and public works at and in the City of Daca in Bengal." *Mitford vs. Reynolds*, 1 *Phil.* 192 (1841) 41 *Eng. Reprint* 604. A gift "for the benefit and ornament" of a town. *Faversham vs. Ryder*, 27 *Eng. L. & Eq. R.* 367. A gift of money to be spent for the use and benefit of a town or of the institutions thereof. *Mayor &c. of Wrexham vs. Tamplin*, 21 *Weekly Rep.* 768. A trust to use the rents of land in paving, lighting or cleaning the streets of a town, conveying water thereto and other public improvements. *Atty. Gen. vs. Heelis*, 2 *Sim. & Stu.* 67. For erecting a town house. *Coggeshall vs. Pelton*, 7 *Johns. Ch.* 292. For planting shade trees. A gift to the City of Philadelphia in trust, the income to be expended in planting shade trees, "especially in situations now exposing my fellow citizens to the heat of the sun." *Cresson's Appeal*, 30 *Pa. St.* 434. A gift of money, the interest of which should be "laid out in repairing highways, and bridges" of a certain town. "The object of the devise is to confer a public benefit; something beneficial and necessary to all persons indiscriminately, quite as much as gifts to institutions for learning, or religion, or to the poor and helpless." *Hamden vs. Rice*, 24 *Conn.* 350.

From these and other cases which were cited by the counsel for the appellant, it is evident that the following definition of charitable uses stated by Justice Gray, in *Jackson vs. Phillips*, 14 *Allen* 566, is sound and well established by many cases:

"A charity, in a legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to

establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of taxation. It is immaterial whether the purpose is called charitable in the gift itself if it is so described as to show that it is charitable in its nature." This definition was adopted by Chancellor Saulsbury in *Doughten vs. Vandever*, and has been quoted by other Courts. Indeed, there seems to be few if any cases holding contrawise. The case at bar is within this definition. The uses for which the corporation was created was "for the use and benefit and behoof of the inhabitants of the town of New Castle." It is public, because it relates to all the inhabitants of a particular community and not to any classification of such inhabitants, or to any group thereof separately from the other inhabitants by any distinction of race, creed, social rank, wealth, poverty, occupation, or business, or even separated by geographical lines subdividing the community into wards, districts or otherwise. It is general, in that the objects to be accomplished are as wide as possible. They may be educational, philanthropic, eleomosynary or religious. They may be the erection of public works or buildings, public streets, and any other form of municipal improvement. It is indefinite, because it is not for any particular person, or set of persons fixed by any artificial or arbitrary selections, designated in the gift. It is enduring because it is not for a day, or a generation, but has the element of permanence and continuity for coming generations.

The particular uses to which the rents received from the land have been, in fact, put, as shown by the agreed statement of facts, are quite immaterial and have no bearing on the question. But it should be noted that these actual uses were those which distinctly belong to charitable uses. A trust created to accomplish either of the purposes for which the proceeds of the land have been used would be held to be a charitable trust—viz.: a trust to support the public schools, for municipal improvements, or for gifts to needy persons of a community. It is also quite unimportant that these purposes are among those for which moneys are raised by the assessment and collection of municipal taxes. It

rather demonstrates the public character and generality of the purposes and objects of the trust to show that property within the town is subjected to taxation for the same purposes by the municipality, for taxation is of the property of the rich and poor and for the benefit of both and the burdens of taxation are lessened by reason of this trust.

It was urged, however, by the appellee that the gift was not to a corporation for charitable uses because the land itself was not so used, but the income thereof, and that the land being used as a source of revenue was subject to assessment and taxation. Many cases were cited in the comprehensive brief of counsel for the defendant in error to support this position. But a careful examination of the constitutions and statutes of the several states in which these cases were decided, as set out in the appellants' brief, shows that these cases do not apply aptly to the case at bar. Almost all the states have constitutional or statutory regulations different from those of our own State, and which control the courts in deciding whether particular property is exempt from taxation. None of them are identical with, or are as broad and general as the Delaware statute. In Arkansas, Colorado, Connecticut, Indiana, Iowa, Maryland, Minnesota, North Dakota, Rhode Island, and New Jersey, the exemption expressly relates to buildings used for charitable purposes. In Arkansas, Florida, Illinois, Kansas, Missouri, Mississippi and New Jersey the use to which the property is put for charitable purposes is clearly made the test of exemption and not the ownership. The occupation of the property by charitable institutions is the test enacted in Florida, Massachusetts, Michigan, North Dakota, and South Carolina. Other states, such as Arkansas, Georgia, Louisiana, Massachusetts, Michigan, Minnesota, South Carolina and Tennessee, exempt "institutions" of public charities, indicating the habitation in which the charitable work is carried on, as distinct from the property owned by the organization by which its work is done. Some states expressly make subject to taxation such of the property owned by charitable corporations as is held as an investment or source of profit or revenue, viz.:

Florida, Illinois, Iowa, Louisiana, Minnesota, Mississippi, North Dakota, Ohio, Pennsylvania, Tennessee and West Virginia. The decisions of the courts of these states, therefore furnish no help to this Court in construing the Delaware statute.

The recent amendments of the exemption Act under consideration confirm the interpretation herein put on the Act. By an Act approved April 5, 1909, the Act in question was so changed as to read:

"All real and personal property not belonging   *   *   * to any corporation created for charitable purposes and not held by way of investment, shall be liable to taxation and assessment for public purposes."    25 *Del. Laws*, c. 36, *p.* 82.

The conclusion of this Court, therefore, is that the gift by William Penn of the land in question constituted a charitable use or trust, and that that land held and owned by the defendant, a corporation created for the purpose of administering that trust, was real property belonging to a corporation for charitable uses and therefore exempt from taxation for public purposes. It was, therefore, not liable to the tax mentioned in the case stated, and the judgment of the Court below should be reversed.

Let a judgment be entered accordingly, and judgment entered for the appellant, the defendant in the Court below, with costs.