## NEWPORT.

PETITION OF MAHLON VAN HORNE *et al.* for an Opinion of the Court.

A testator by his will in 1819 devising his mansion house, together with the lot and buildings thereon to the S. B. Church corporation in Newport for a parsonage, directed that the corporation "keep the said house and premises in good tenantable repair, suitable for the minister whom they shall appoint and set over them and his family to live in,—the occupying of said house shall be considered to be to the said minister free and clear from all incumbrances whatever beside the six hundred dollars, as his salary which the said corporation or Society is to make up without any deduction whatever; but in case that the said Church or Society shall suffer said premises so to go to decay as not to be fit for their minister and family to live in for one year, then and in that case my will is that the town council of the town of Newport take possession of said house, lot and buildings thereon, and dispose of the same in such way and manner as they may think proper for the support and comfort of the poor of said town of Newport." Ever since the death of the testator the corporation has kept the house and premises in good tenantable repair. Of late years the minister of the church has not lived in the house on account of its remote-

ness from the church and the change which has taken place in its surroundings, but the corporation has, from time to time, let the premises and applied the rents for the benefit of the minister, in accordance with the trust.

The General Assembly in 1892 passed an act by which said corporation, with the concurrence of the board of aldermen of the city of Newport, (the town of Newport having been incorporated as the city of Newport, and the board of aldermen being the successor of the town council of the town,) were authorized and empowered to sell and convey said estate, "and with the like concurrence of the Board of Aldermen to invest the proceeds of the said sale in a house lot more eligibly situated for a parsonage for the said church and society, to be held by said church and society for the same purpose and upon the same trusts and conditions which they held the estate hereby authorized to be sold."

*Held*, that the act was constitutional as a valid exercise of legislative power.

*Held*, further, that the S. B. Church corporation can, under the authority of said act, and with the concurrence of the board of aldermen of Newport, convey a good title to the property to a purchaser free and clear from all trusts, and hence, that the purchaser would be under no obligation to see to the application of the proceeds.

If the proceeds of sale are reinvested in a house lot instead of a house and lot, the trustee must proceed to build, within a year from the purchase, a parsonage suitable for its minister and his family to live in, otherwise its estate in the lot will be liable to be determined by the limitation in the devise.

CASE stated for an opinion of the court under Pub. Stat. R. I. cap. 192, § 23.

*Providence, October* 26, 1893. MATTESON, C. J. This is a petition for an opinion. The case stated is as follows:—

The Second Baptist Church and Society in Newport has entered into a contract in writing with Mahlon Van Horne to sell and convey to him, by a good and sufficient deed to vest in him a good and clear title, free from all incumbrances, a certain parcel of land, with the dwelling house and other buildings and improvements thereon, situated in Newport and particularly described in the petition. Van Horne by the same agreement binds himself to purchase the property, provided the vendor can make a good and clear title to it. Both parties are ready to carry out the agreement, but the purchaser has doubts as to the validity of the title.

The facts on which the validity of the title depends are these: Constant Taber, formerly of Newport, deceased, died seized of the estate. His last will and testament, dated November 19, 1819, which with a codicil thereto was duly admitted to probate, contains a clause as follows:

"*Item.* After the decease of my wife, I give, devise and bequeath unto the above named Church and Society the mansion house wherein I now live, together with the lot and all the buildings thereon standing, and the privileges and appurtenances thereunto belonging, or in any wise appertaining, for a parsonage house, and I direct that the corporation of said Society keep the said house and premises in good tenantable repair, suitable for the Minister whom they shall appoint and set over them and his family to live in,—the occupying of said house shall be considered to be to the said Minister free and clear from all incumbrances whatever beside the six hundred dollars, as his salary which the said corporation or Society is to make up without any deduction whatever; but in case that the said Church or Society shall suffer said premises so to go to decay as not to be fit for their Minister and family to live in for one year, then and in that case my will is that the town council of the town of Newport take possession of said house, lot and buildings thereon, and dispose of the same in such a way and manner as they may think proper for the support and comfort of the poor of said town of Newport."

The Second Baptist Church and Society derives its title under this devise. The wife of the testator died before him, and on his decease the Second Baptist Church and Society entered into possession of the property and has since kept the dwelling house and premises in good tenantable repair; of late years, however, the minister of the church has not resided there on account of the remoteness of its situation and the change which has taken place in its surroundings; but the church and society have let the property from time to time and applied the rents for the benefit of the minister, in accordance with the trust.

The church and society, wishing to buy a lot and to erect a new parsonage nearer to its church and more eligibly located, applied to the General Assembly, by petition, for leave to sell the land devised to it as stated, and the city council of Newport, (the town of Newport having been incorporated as the city of Newport), by a resolution passed March 26, 1887,

concurred in the prayer of this petition, with the proviso, "that the proceeds of sale be invested in another estate for a parsonage, to be held for the same purpose, and on the same trusts, and the same conditions as those which relate to, affect and limit the estate sold."

The General Assembly, at its January Session, 1892, passed an act as follows:—

"AN ACT AUTHORIZING THE SECOND BAPTIST CHURCH AND SOCIETY IN NEWPORT TO SELL CERTAIN REAL ESTATE IN NEWPORT.

"*It is enacted by the General Assembly as follows:*

"SECTION 1.    The Second Baptist Church and Society in Newport is, with the concurrence of the Board of Aldermen of the city of Newport, fully authorized and empowered to make sale of and to convey by good and sufficient deed the estate given and devised to the said Society by Constant Taber in his last will and testament, situate on the south side of John Street in said city of Newport, for a parsonage, and with the like concurrence of the said Board of Aldermen, to invest the proceeds of the said sale in a house lot more eligibly situated for a parsonage for the said church and society, to be held by said church and society for the same purpose and upon the same trusts and conditions which they held the estate hereby authorized to be sold.

"SEC. 2.    This act shall take effect upon its passage."

The question submitted is, whether the Second Baptist Church and Society can, with the concurrence of the Board of Aldermen, convey a good title to the property to a purchaser, free and clear from all trusts.    It maintains that it can; while Van Horne insists that a purchaser would take the property charged with the equity of seeing that the purchase money is invested in a house lot more eligibly situated for a parsonage for the said church and society; and also that the title to such lot is taken for the same purpose and held on the same trusts and conditions as the estate sold is held under the will of Constant Taber; and further, that inasmuch as the limitation in the will by which the town council of New-

port is authorized to take possession of and dispose of the property was, in case that the said church or society and corporation shall suffer the premises so to go to decay as not to be fit for their minister and his family to live in for the space of one year, that the General Assembly cannot change the trusts in the will so as to apply the same to a house lot; and further, that as the principal purpose and trust disclosed in the will was to keep the mansion house in tenantable repair suitable for the minister and his family to live in, the General Assembly could not authorize a sale and alter the provisions of the trust to apply it to a house lot, even if there was a building purchased with the lot suitable for a parsonage for the minister of the church and society.

The first question thus made is whether or not a purchaser would take the title subject to the equities suggested. We think the question must be answered in the negative. The act provides that the sale and conveyance and the reinvestment of the proceeds shall be with the concurrence of the Board of Aldermen, the successor of the town council. The Second Baptist Church and Society and the Board of Aldermen, as trustees, represent all persons interested in the trusts. The General Assembly very properly left the protection of the interest of their respective *cestuis* to the trustees. The effect of the act, assuming it to have been a valid exercise of legislative power, in case of a sale in accordance with its terms, then, is to divest the land sold of all trusts, and, consequently, to absolve the purchaser from all obligation with reference to the reinvestment of the proceeds,—such reinvestment being left entirely to the Second Baptist Church, with the concurrence of the Board of Aldermen. This brings us to the question,—Was the act a valid exercise of legislative power? We think it was.

The primary object which the testator had in view in the devise of his mansion house and lot to the church and society was to provide a suitable abode for the minister who might, for the time being, be settled over the church. He did not foresee that with the lapse of time and the changes incident to human affairs the property might cease to be useful for

the purpose intended, and, therefore, he did not insert in his will a power to the church and society to sell and convey the property so held in trust and to reinvest the proceeds in another house and lot better adapted to the use of the trust. In this state of facts, the trustee, with the concurrence of the city council of Newport, has invoked the authority of the General Assembly for a sale, which it is not unreasonable to suppose the testator would have provided for if he had anticipated that the necessity would arise. The legislative action deprives no one of his property, but merely divests the trusts affecting one parcel of land and transfers them to another parcel better adapted to the purpose of the primary trust; and this, with the concurrence of the trustee of the secondary trust which will arise in case of the determination of the estate of the primary trustee under the limitation in the devise. Similar legislative action in the case of lands of infants, insane persons, persons *non compotes mentis*, and others, who for some reason have been unable to act for themselves, has frequently been taken and sustained. Such action is held to be legislative rather than judicial; and not being prohibited by the constitution, and having been long exercised by the legislature, is regarded as within its constitutional competence. *Taylor* v. *Place*, 4 R. I. 324, 332–334; *Thurston* v. *Thurston*, 6 R. I. 296, 302; *Lyman, Petitioner*, 11 R. I. 157; *Sohier* v. *Mass. General Hospital*, 3 Cush. 483, 487; *Clarke* v. *Hayes*, 9 Gray, 426; *Sohier* v. *Trinity Church*, 109 Mass. 1; *Leggett* v. *Hunter*, 19 N. Y. 445; *Williamson* v. *Berry*, 8 How. U. S. 495, 537.

In *Sohier* v. *Trinity Church, supra*, it was held that whenever church property is held in trust for the general purposes of a religious society and cannot otherwise be conveyed, the legislature has constitutional power to authorize the trustees to convert their real estate into personalty, in order that the avails may be reinvested or otherwise appropriated to the purposes of the trust.

Again, this court is authorized by Pub. Stat. R. I. cap. 178, § 7, whenever the sale or conveyance of any trust estate shall become necessary or expedient, in its discretion, upon

a suit in equity, to decree such sale and conveyance and the investment, reinvestment and application of the proceeds thereof, upon such security, and in such manner as shall best effect the objects of the trust and be most safe and beneficial for all interested therein. This power has frequently been exercised by the court. As such a power is not inherent in the jurisdiction of the court, not being of a judicial nature, it is difficult to see how, unless the General Assembly itself possesses the power, it could confer it on the court.

As the General Assembly had power to authorize the sale as stated, and as the effect of that sale will be to divest the land sold of all trusts affecting it, and, therefore, to absolve the purchaser from the duty of seeing to the reinvestment of the proceeds, we do not see that he is concerned with the questions whether such proceeds can properly be reinvested in another house and lot or in another lot merely; or whether the action of the General Assembly authorizing the reinvestment in another lot more eligibly situated for a parsonage, instead of another house and lot, is such a change in the trusts of the will as the General Assembly could not make. As, however, the questions have been raised, it may not be amiss for us to give our opinion in relation to the matter. The primary object of the trust, as we have seen is to provide a suitable abode for the minister, who for the time being, may be settled over the church. The act of the legislature has provided for a reinvestment of the proceeds of the sale in a house lot more eligibly located for a parsonage, to be held on the same trusts and conditions as that authorized to be sold. The trustee, therefore, in order to retain its estate in the lot purchased, must proceed to build, within a year from the purchase, a parsonage suitable for its minister and his family to live in; otherwise its estate in the lot will be liable to be determined by the limitation in the devise. The purpose of the trust being to provide a suitable abode for the minister and his family, a neglect to build such a parsonage within the period limited would be tantamount, in contemplation of the trust, to allowing the mansion house originally devised "to go to decay so as not to be

fit for their minister and family to live in" for the same period, since the minister and his family could not live on the lot till the erection of the parsonage.

We are of the opinion that the Second Baptist Church and Society in Newport can, under the authority of said act of the General Assembly, and with the concurrence of the Board of Aldermen of said city, as provided in said act, make a good title to the land in question, free from all trusts.