TRUSTEES OF THE NEW CASTLE COMMON, a corporation organized
and existing under the laws of the State of Delaware,

*vs.*

ELVA S. GORDY and RALPH E. GORDY, and H. ALBERT YOUNG,
Attorney General of the State of Delaware.

*Supreme Court, On Appeal, December 13, 1952.*

SOUTHERLAND, Chief Justice, TUNNELL, Justice, and HERR-MAN, Judge, sitting.

*Edward W. Cooch, Jr.,* for plaintiff.

*Albert W. James,* of Hering, Morris, James & Hitchens, for defendants Elva S. Gordy and Ralph E. Gordy.

*H. Albert Young,* Attorney General, *pro se.*

SOUTHERLAND, Chief Justice, delivering opinion of the court:

Trustees of the New Castle Common, a corporation (herein "plaintiff"), brought suit in the Court of Chancery against Elva S. Gordy and Ralph E. Gordy (herein "defendants") for the specific performance of a contract by which plaintiff has agreed to sell and defendants have agreed to buy certain land owned by plaintiff. Defendants have refused to perform the contract, asserting that plaintiff is without power to convey good title to the land, which is part of the corpus of a charitable trust administered by plaintiff. Plaintiff avers that it is empowered to convey by the *Act of the General Assembly of April* 15, 1885, *ch. 575, Vol.* 17, *Del. Laws;* and defendants reply that the act is unconstitutional.

This issue of law having been framed, the Chancellor has certified to us under *Rule* 20 the following question:

"Is Section 1 of the Act of the General Assembly of the State of Delaware, being Chapter 575, Volume 17, Laws of Delaware, passed at Dover April 15, 1885, which authorized and empowered the Trustees of New Castle Common to sell and convey in fee simple, in whole or in part, the real estate held by them in trust, and to make good and sufficient deeds under the corporate seal of said Trustees, in such manner that the Purchaser or Purchasers shall take and hold the said property freely and discharged from the said Trust, and without liability as to the application of the purchase money, valid and constitutional?"

The essential question concerns the nature and extent of the power of the General Assembly of this state over the administration of a charitable trust.

After argument in the cause, this court of its own motion stayed proceedings here until the Attorney General should be made a party to the cause, and leave was granted to the parties to take appropriate proceedings in the court below for that purpose. See *ante p.*

196, 91 *A.2d* 135. Such proceedings were had and have been certified to this court. The Attorney General filed in the court below a motion for summary judgment for the defendants, but has now advised us that the motion will not be pressed. He has also advised us that he has concluded that the issues have been adequately briefed and that the public interest will be protected by this court's decision. He accordingly submits himself to any judgment which may be given in the cause. We therefore take up the merits.

The facts are these:

By virtue of a warrant from William Penn, Proprietary and Governor of Pennsylvania and the "Counties annexed" (now the State of Delaware), there was surveyed in 1704 a tract of 1068 acres of land adjoining to or near the Town of New Castle, New Castle County, "to the only use and behoof of the * * * Inhabitants" of the town, "to lie in common." No formal deed or grant was then made, however, and no authority for the regulation of the use of the common was established.

By the year 1760 the encroachments of trespassers upon the common lands appear to have rendered necessary the creation of a body empowered to administer and protect the rights of the inhabitants of New Castle in the common lands. Accordingly, upon petition to the colonial assembly of the three counties, and upon application to Thomas Penn and Richard Penn as "Proprietaries and governors in chief of the Counties of New Castle, Kent and Sussex, on Delaware", the Proprietaries, by an instrument dated October 31, 1764, constituted certain of the inhabitants of New Castle "Trustees of New Castle Common", to be "one body corporate and politic * * * by the name of the Trustees of New Castle Common", with perpetual succession; and by the same instrument granted to the Trustees the tract of 1068 acres theretofore surveyed. After conferring certain administrative powers upon the Trustees, the instrument—a combined charter and deed—provided that the Trustees "shall not have, nor be deemed or construed to have, any right, power or authority to grant, bargain, sell, alien, convey, release or confirm the hereby granted premises, or any part thereof, to any person or persons whatsoever;" and declared that the land "shall be and remain * * * for the use of a Common for the in-

habitants of the Town of New Castle, and to no other use, intent or purpose whatsover." A condition subsequent was added, providing that if any part of the land should be sold or conveyed away, or if the corporation should be dissolved or its charter forfeited, then and in any such case the grant should "cease, determine and become absolutely void", and the granted premises should revert to the grantors, their heirs and assigns.

These restrictive provisions of the grant—the condition subsequent and the limitation of the use of the land to a common—had the effect of preventing the inhabitants of New Castle, the beneficiaries of the trust, from reaping any substantial benefit from the trust property. In 1789 representations to this effect were made to the Penn heirs, and in 1790 the trustees presented to the Penns a formal petition seeking the relinquishment by them of the burdensome limitations of the former grant. By deed dated July 7, 1791 (herein "the deed of 1791"), the Penns, as "late proprietaries" conveyed the land to Isaac Grantham and others in fee simple, in trust, however, for the use and benefit of the inhabitants of the Town of New Castle, and to be conveyed by the grantees, "by such assurance or assurances" as counsel might advise, in trust "unto the present or future trustees" of the land "or unto such future trustees and their successors as may be chosen or appointed, in and by virtue of an act of incorporation, when the same may be passed by an act of the General Assembly of the Delaware State, * * * to be appropriated in such manner as a majority of trustees in their wisdom may direct". Then follows this proviso:

"Provided, that nothing herein contained, or in the assurance or assurances so to be made as aforesaid, shall vest the trustees of the said Common with any power or authority to sell the same, or any part thereof."

By the Act of the General Assembly of January 25, 1792, entitled "An Act to enlarge the Corporate Power of the Trustees of the New Castle Common" (herein "the Act of 1792"), the trustees of the Common were re-created a "body politic and corporate * * *" by the name of the Trustees of the New Castle Common, and empowered to take title to the land, "and the same, or any part thereof, to grant, demise and dispose of for the use and behoof of the Inhabitants of the said Town of New Castle, to be

appropriated in such manner as a majority of the said trustees in their wisdom may direct." There follows this proviso:

"*Provided always*, that they reserve to themselves, and their successors, for the benefit and use of the inhabitants of the said town, an annual or other rent, as a reasonable equivalent for the leasing or disposing of the before described tract of land, or any part or parts thereof, and that neither the said trustees, nor their successors, shall have power to sell the said tract of land, nor any part or parts thereof, absolutely, nor lease, nor otherwise dispose thereof for a longer term than thirty years from the commencement of the lease or other contract."

On July 30, 1792 (herein "the deed of 1792"), Isaac Grantham and others conveyed the land to the surviving Trustees of the New Castle Common in fee simple, subject to the following trusts and conditions:

"In trust, nevertheless, to and for the special uses, benefits, ends, intents and purposes, and under and subject to the several provisos contained, mentioned and declared, as well in the beforementioned indenture of conveyance from the said John Penn, of Stoke Pogis, and John Penn, of Dover Street [the deed of 1791], as also in an Act of General Assembly of the Delaware State, passed at Dover, the day in the year of our Lord one thousand seven hundred and ninety-two, entitled 'An Act to enlarge the Corporate Powers of the Trustees of the New Castle Common.'"

■ The gift by William Penn and his heirs, embodied in the instruments just reviewed, created a charitable trust. *Trustees of New Castle Common v. Megginson*, 1 *Boyce* 361, 77 *A.* 565.

On April 15, 1885, was passed the *Act of Assembly, Vol.* 17, *Laws of Del., Ch.* 575, empowering the Trustees of the New Castle Common to sell and convey in fee simple all or any part of the lands held by them. It reads as follows:

"Whereas by warrant from William Penn and by subsequent charter and deeds from his heirs, certain real estate adjacent to the City of New Castle (then town) was vested in trustees for the benefit of the citizens of said city (then town); and whereas it has been represented to this General Assembly that it would be greatly for the benefit of the said city and its inhabitants if the said real estate should be sold; therefore

"*Be it enacted by the Senate and House of Representatives of the State of Delaware in General Assembly met (two-thirds of each branch concurring therein):*

"Section 1. That the Trustees of New Castle Commons be and they are hereby authorized and empowered to sell and convey in fee simple, in whole or in part,

the said real estate now held by them in trust, making therefor good and sufficient deeds under the corporate seal of the said trustees, in such manner that the purchaser or purchasers shall take and hold the said property free and discharged from the said trust, and without liability as to the application of the purchase money.

"Section 2. Upon sale of the said premises, in part or in whole, as aforesaid, the purchase money arising therefrom shall be invested by the said trustees in good real estate security, to be held upon the same uses and trusts as the said real estate is now held and for no other, and the income arising from the said investments shall be applied by them as the rents and profits of the real estate have heretofore been applied, for the benefit of the inhabitants of the City of New Castle in the discretion of the trustees.

"Section 3. Any act or parts of acts inconsistent herewith or with the duties of the trustees as herein provided are hereby repealed.

"Section 4. This shall be deemed and taken to be a public act."

Whether these provisions constitute a valid exercise of the legislative powers of the General Assembly is the question we are to answer.

Before considering this question, however, we notice some preliminary objections to plaintiff's title advanced by defendants. These objections, if valid, have a bearing on the constitutional question.

■ First it is said that the deed of 1791 conveyed nothing because it was executed by the Penns not as owners but in the purported exercise of seignorial rights as "late Proprietaries and Governors in Chief" of the three lower counties, all of which rights were terminated by the Revolution. The word "proprietary" is consistent with "owner" (see *Bouvier's Dictionary*, *"Proprietary"*); and it was as owners that release of their rights was sought and given. We see nothing of substance in this argument.

■ Next it is said that the acts of the *General Assembly of 1793 and 1794, Vol. 2, Laws of Del., Ch. 9 c* and *57 c*, repudiated the claims of the Penn heirs to own land in Delaware, since the inhabitants were forbidden to accept grants from them and the Penn claim of title to lands within the state was asserted to be unfounded. That the Penn title was good has been established. *State of New Jersey v. Delaware*, 291 *U.S.* 361, 54 *S.Ct.* 407, 78

*L.Ed.* 847. Assuming that the effect of the Act of 1794 was to divest the Penns of their title (an assumption difficult to make), it is impossible to believe it was intended to impair or did impair the validity of conveyances theretofore made to and for the benefit of citizens of the state. This contention is without merit.

■ Finally it is said that the provisions of the Act of 1792 conferring upon the Trustees authority to lease the land are inconsistent with and destructive of the purpose of the deed of 1791. This contention is founded upon the formal language of the conveyance—"In Trust Nevertheless, to and for the use, benefit and behoof of the Inhabitants of the Town of New Castle"—which, it is said, contemplated the continued use of the lands as a common by the individual inhabitants. This argument, unsubstantial on its face, ignores the deed of 1792, executed and delivered after the enactment of and subject to the conditions of the Act of 1792, which authorizes the leasing of the land. The authority of the Penn trustees (Grantham and others) to accept the conditions of the act and execute and deliver the deed is not open to question. This contention is likewise without merit.

We come now to the crux of the case. May the General Assembly constitutionally authorize the sale of real estate held in a charitable trust if the intent of the donor is to the contrary?

Defendants contend that the language of the deed of 1791, preserved in the Act of 1792 and in the deed of 1792, is a regulation for the administration of the trust and imports an express prohibition against sale. Plaintiff says, first, that it is not such a trust regulation but a mere absence of corporate power; and second, if it be a regulation of the trust it is not an express prohibition of sale, but only an absence of power, equivalent to silence on the subject.

■ The proviso of the 1791 deed is quoted above. We cannot accept the contention that it is nothing more than a denial of corporate power. We think that it is a provision relating to the administration of the trust. Its effect is to be determined under principles of trust law—not of corporation law. If the trustees had been individuals instead of a body corporate, the proviso could

have no effect except as an administrative provision for the control of the trust property. To give it another meaning because the trustees were a body corporate would be most unreasonable.

Whether or not the language of the proviso is to be deemed an express prohibition against sale, it is certainly an implied one. *Rolfe & Rumford Asylum v. Lefebre*, 69 *N.H.* 238, 45 *A.* 1087, involved a similar provision in a will creating a charitable trust. The trustees were required to hold the devised land on the condition that it should be applied to the purpose specified "with no power of sale * * * during the term of ninety-nine years". The court treated this language as a limitation declaring the property inalienable, and the proposed sale of a portion of the land as a violation of the instructions in the will. In the instant case the provision that nothing in the deed should vest in the trustees any power to sell the land is at the least evidence of the donors' intention that it should not be sold; and this intention is emphasized by the provision in the Act of 1792 that the trustees should have no power to lease for a term longer than thirty years. We think that the language imports at least an implied prohibition against sale.

This being so, we are to inquire whether such a restriction may be overridden and a sale authorized; and if so, whether such authority may be given by legislative act.

■ The general rule is that notwithstanding such a restriction a court of equity may, on a proper showing, authorize the sale or conversion of real estate in a charitable trust. *Delaware Land & Development Co. v. First and Central Presbyterian Church*, 16 *Del.Ch.* 410, 147 *A.* 165, and cases cited; *Opinion of Honorable N. B. Smithers*, approved by Chancellor Saulsbury, 8 *Del.Ch.* 554; *Rolfe & Rumford Asylum v. Lefebre, supra; Henshaw v. Flenniken*, 183 *Tenn.* 232, 191 *S.W.2d* 541, 168 *A.L.R.* 1010, and cases collected in note at pages 1031; *Bogert, Trusts and Trustees, Vol.* 2, *Sec.* 392.

It is now generally held that this power is vested in a court of equity as a part of its inherent jurisdiction over charitable trusts, exercised in England by the Chancellor prior to passage of the English Statute of Charitable Uses. *Delaware Land & Development Co. v. First and Central Presbyterian Church, supra;*

*Doughten v. Vandever, 5 Del.Ch.* 51; *Scott on Trusts, Vol. 3, Secs.* 348.2, 348.3, 381.

█ It is also generally held that the Legislature, as successor to the prerogative powers of the English Crown over charitable trusts, has a like power to authorize the sale of real property held in such a trust, provided the proceeds are applied to the purposes of the trust. *Delaware Land & Development Co. v. First and Central Presbyterian Church, supra* (general statute authorizing religious corporations to grant, demise and dispose of their property overrides restrictive provision for use of land for church site); *Sophier v. Trinity Church,* 109 *Mass.* 1 (legislative authority to sell church property and reinvest the proceeds in a new building upheld); *In re Van Horne,* 18 *R.I.* 389, 28 *A.* 341 (legislative authority to sell parsonage and reinvest in a new one upheld); *Crawford v. Nies,* 220 *Mass.* 61, 107 *N.E.* 382 (power of the Legislature to authorize sale of land free from trusts for religious uses not to be doubted); *Stanley v. Colt,* 5 *Wall.* 119, 18 *L.Ed.* 502 (Legislature may authorize sale of land held for religious purposes although sale expressly forbidden by will). *Bogert, Trusts and Trustees, Vol. 2, Sec.* 398, says:

"Acts authorizing the sale of land held under a charitable trust would seem to be clearly valid as in aid of its execution and intended to help the trustee meet changes in conditions."

█ In this country, however, the powers of the Legislature over charitable trusts is not co-extensive with the prerogative of the Crown. It is limited by principles of American constitutional law. *Scott on Trusts, Vol. 3, Sec.* 399.5. For example, the Legislature may not exercise the power of a Chancellor under the doctrine of *cy pres* and thus divert the corpus of the trust to uses other than those specified. *Bogert, Trusts and Trustees, Vol. 2, Sec.* 434; *Scott on Trusts, Vol. 3, Sec.* 399.1. Nor may it terminate a charitable trust or change the methods of its administration. See *Bogert, Trusts and Trustees, Vol. 2, Sec.* 398. The Justices of the Supreme Judicial Court of Massachusetts, in response to questions propounded by the State Senate respecting certain bills affecting charitable trusts, state the following general principles applicable to legislative power in this regard:

"Gifts to trustees or to eleemosynary corporations, accepted by them to be held upon trusts expressed in writing or necessarily implied from the nature of the transaction, constitute obligations which ought to be enforced and held sacred under the Constitution. It is not within the power of the Legislature to terminate a charitable trust, to change its administration on grounds of expediency, or to seek to control its disposition under the doctrine of *cy pres*. *Cary Library v. Bliss*, 151 *Mass.* 364, 25 *N.E.* 92, 7 *L.R.A.* 765; *Crawford v. Nies*, 224 *Mass.* 474, 488, 113 *N.E.* 408. Determination of the uses to which shall be devoted trusts no longer susceptible of execution according to their foundation is a well-recognized branch of chancery jurisdiction. It is a subject respecting which there is constant resort to the judicial courts for decision. The General Court may authorize the conversion into personalty of real estate held on trusts, which cannot otherwise be conveyed, exercise a considerable power over charitable trusts held by municipalities, and enact general laws respecting the regulation of charitable trusts." *In re Opinion of the Justices*, 237 *Mass.* 613, 131 *N.E.* 31, 32.

We think the foregoing correctly states the general principles of law on this subject as approved by the great weight of authority. Legislation respecting a charitable trust is valid if in aid of its purpose and not in destruction or impairment of the interests arising under it.

In the instant case the act of 1885 does no more than to confer upon the trustees power to sell and convey outright all or any part of the real estate which forms the corpus of the trust. It expressly requires the proceeds to be held upon the same uses and trusts as the real estate is now held, and the income to be used for the benefit of the inhabitants of the town (now city) of New Castle.

Does the contemplated sale tend to the destruction or impairment of the purposes of the trust? We think not. We have already shown that the effect of the deed of 1791 and of the proceedings subsequent thereto was to eliminate entirely any requirement that the land should necessarily be used as a common, and to permit it to be rented and made productive. Defendants' contrary contention we have rejected. After the changes effected by these proceedings the species of property in which the trust corpus may be invested has become of secondary importance. In these circumstances, and in the light of the greatly changed economic conditions of the section of New Castle County in which the land is situated, it is entirely reasonable to say that the right to convert the land, or some of it, into personalty is not only consistent with

the fundamental purpose of the trust but in all likelihood will promote it. The Act of 1885 expressly requires the proceeds of any sale to be held upon the same trusts as those upon which the real estate is now held. Thus we think that under the authorities above cited the act is constitutional.

Defendants, however, challenge the soundness of these authorities.

It is said that whatever may be the rule elsewhere it has been held in this state that the General Assembly has no power to authorize the sale of real estate in a charitable trust against the will of the donor. The decision of the Court of Errors and Appeals in *Tharp v. Fleming*, 1 *Houst.* 580, is said to settle the question. That case must now be considered. The facts before the court were as follows:

Under the will of Benjamin Potter lands were devised to Charles T. Fleming in trust for the support and education of poor white citizens of Kent County. In the original will the testator had authorized the sale of the lands and the investment of the proceeds; but by a codicil he directed that the real estate, instead of being sold, should be rented and the proceeds applied to the purposes of the trust. The lands devised consisted of several tracts, for the most part wooded, and all extremely poor, yielding a scanty revenue, a great portion of which, because of the dilapidated condition of the buildings and improvements, was necessarily consumed in repairs, in the preservation of the land from waste, and in collecting rents. By an *Act of the General Assembly*, *Vol.* 10, *Laws of Del.*, *Ch.* 530, the preamble to which recited these facts, four trustees (including Fleming) were appointed and authorized to sell the land at public sale, the net proceeds to be invested under the direction of the Chancellor to further the objects of the trust. Fleming, trustee under the will, refused to serve under the act, and sought to enjoin the remaining trustees from proceeding to sell the lands under legislative authority. Chancellor Johns upheld his suit and enjoined the proposed sale. On appeal the decree was affirmed in a *per curiam* opinion. The court said that inasmuch as the devise in trust of the real estate to be rented and not sold was a valid devise, "it was not in the power of the Legis-

lature to authorize and direct the sale and conversion of it into personalty, even for the purposes of the trust, * * * because it would be in direct contravention of the will of the testator." No authority was cited for this conclusion, nor does it appear from the court's opinion or from the argument of Fleming's counsel what constitutional principle was relied upon. The general principles above discussed were not noticed. Possibly the act was regarded as impairing the obligation of a contract (*cf. Gray, The Rule Against Perpetuities*, (*4th Ed.*), *Sec.* 590, *note* 4); or possibly the court had in mind the constitutional doctrine of the separation of powers.[1] Defendants invoke both principles.

■ As to *Section* 10, *Article* I, *of the Federal Constitution*, forbidding a state to pass any law impairing the obligation of contracts, it is clearly inapplicable. In *Stanley v. Colt, supra,* the Supreme Court of the United States considered an act of the Connecticut Legislature authorizing the sale of land held in a charitable trust created by a will specifically forbidding sale of the land. The constitutionality of the act was assailed on the ground (among others) that it impaired the obligation of a contract. See 5 *Wall.* 119, 18 *L.Ed.* 505. Justice Nelson, after referring to the power of a court of equity to authorize the sale of lands in a charitable trust, said:

"This power, in the state of Connecticut, it appears, is exercised by its legislature, as in the present instance. Many acts of the kind have been referred to in the argument, extending through a long series of years down to the present time.

"We cannot doubt that the power exists in the legislature, and it is not for this court to revise the facts upon which it has seen fit to exercise it. *Judgment affirmed.*" 5 *Wall.* 169, 18 *L.Ed.* 510.

The case of *Stanley v. Colt* is cited with approval in *Ould v. Washington Hospital*, 95 *U.S.* 303, 312, 24 *L.Ed.* 450, 452, and in *Jones v. Habersham*, 107 *U.S.* 174, 183, 2 *S.Ct.* 336, 344, 27 *L.Ed.* 401.

---

[1] At the time of the decision (1858), the doctrine of "substantive due process" had not received recognition in Delaware. See *State v. Allmond*, 2 *Houst.* 612.

The holding in *Tharp v. Fleming* cannot be justified upon the ground here considered. There remains the question of the doctrine of the separation of powers.

It admits of no doubt that from the beginning our state government has been divided into the three departments, legislative, executive and judicial. *In re Opinions of the Justices, Terry*, 88 *A.2d* 128, 138, and cases cited. It is likewise true that, generally speaking, one department may not encroach on the field of either of the others. But, as indicated in the *Opinions of the Justices, supra*, wrongful encroachment is not necessarily shown by the nature of the power exercised or the duty performed, since it is clear that people of our state have never pushed the principle to doctrinaire lengths. It is no doubt true that the power to supervise the administration of trust assets is regarded as naturally appertaining to the judicial power; but from early times charitable trusts have been regarded in this state as a proper subject for legislative acts designed to protect and further the objects of the trust. Thus, beginning in 1799 and continuing down to 1925, the General Assembly passed a series of acts affecting the administration of the lands known as "The Cape" in Sussex County, since held to be a charitable trust. *United States v. 1010.8 Acres, etc., (D.C.)*, 56 *F.Supp.* 120. In that case the validity of these acts was drawn in question, it being asserted that the acts were encroachments on the rights of the beneficiaries, i. e., destructive of the trust, but the acts were upheld by the District Court of Delaware as in aid of the trust and in the interest of the beneficiaries.

We have already noted that the statute conferring general power upon religious corporations to sell and dispose of real estate held by them was upheld in *Delaware Land and Development Co. v. First and Central Presbyterian Church, supra*. Its legislative history, set forth in Judge Harrington's opinion, shows that it stems from an act of 1787, and that it assumed its present form in the *Code of 1852*.

In *Roe v. Town of Seaford*, 2 *Boyce* 348, 80 *A*. 250, 251, the Supreme Court upheld a legislative act vesting in the Town of Seaford legal title to certain land which had been conveyed to

trustees (since deceased) in trust for a burying ground. The title was so vested "for the purpose of carrying out the provisions of said trust." 25 *Del.Laws,* c. 197. The court said:

"There can be no question but that the General Assembly may by an act so transfer the legal title to land held in trust for public purposes from one body or set of persons holding the legal title to another body or set of persons, or to a particular corporation, to hold the land for the same purposes and under the same trusts, and in such cases an actual conveyance of the legal title is unnecessary."

The question here considered was not noticed by the court; but the effect of the decision is a recognition of the validity of a legislative act in furtherance of the purposes of the trust.

Opposed to the authorities discussed above is the decision of the Supreme Court of Errors of Connecticut in *Bridgeport Public Library, etc. v. Burroughts Home,* 85 *Conn.* 309, 82 *A.* 582. In that case land had been devised for charitable uses without power of sale. Holding the power to authorize a sale to be an adjunct of the judicial power, and that the exercise of judicial power was forbidden to the legislature by the Constitution of Connecticut, the Supreme Court held that a legislative act purporting to confer upon the trustees power to sell the land was of no legal effect.

There is much to be said for this view. The decision whether or not changed conditions justify the overriding of a donor's intent in the administration of a trust is one which seems naturally to belong to the judicial rather than the legislative process. But, in addition to an impressive series of decisions elsewhere, we are confronted, first, with a history of unchallenged assertion of legislative power over the matter in our state, and second, with the express holding of the Supreme Court in the *Delaware Land and Development Co.* case [16 *Del. Ch.* 410, 147 *A.* 171]. In that case the deed creating the charitable trust conveyed the land for certain stated religious uses "and to no other use, intent or purpose, whatsoever." It is true that the doctrine of the separation of powers was not expressly considered; but the decision is directly in point. The bearing of the decision upon the marketability of titles to real estate is obvious, and the rule of *stare decisis* is applicable. *Cf. American Ins. Co. v. Iaconi, Del.Sup.,* 89 *A.2d* 141, 152, and cases cited.

We think that the power of the General Assembly of this state to enact legislation respecting lands held for charitable uses is not to be denied, provided its exercise be limited to acts which are in aid of the trust and in the interest of the beneficiaries and which (among other things) do not attempt to abrogate or impair the constitutional powers of the Court of Chancery to call the trustees to account for their administration of the trust property. The legislative power is not to be extended further than already established, and in a doubtful case resort should be had to the unquestioned power of the Court of Chancery rather than to the General Assembly. But within the limitations stated we do not think that exercise of the power is necessarily subversive of the independence of the juduciary, to the preservation of which the divorcement of judicial power from the legislative and the executive is directed. In the Opinions of the Justices, supra, the members of this court expressed their views that a partial relaxation of the doctrine of separation of powers is not inconsistent with the popular will; and we reaffirm that opinion.

We are therefore of opinion that the holding in *Tharp v. Fleming*, in so far as it denies the power of the General Assembly to authorize the sale of lands held in a charitable trust, cannot be supported by the doctrine of separation of powers. There is one aspect of the case, however, not touched upon by the Court of Appeals, which calls for comment. The legislative act considered in that case undertook not only to authorize the sale of the real estate but also to appoint four trustees to sell it, one of them being the trustee already appointed by the Court of Chancery. Conceding the power of the Legislature to appoint a trustee for a charitable trust if it appears that no duly-appointed and qualified trustee exists, we note that a different question is presented by the exercise of legislative power to appoint additional trustees for a charitable trust at a time when the Court of Chancery is engaged in the administration of that trust through its duly-appointed and acting trustee. This point was not noticed by the Court of Errors and Appeals, and we express no opinion upon it.

We accordingly limit our ruling in respect of *Tharp v. Fleming* to the holding set forth in the *per curiam* opinion of the court. That holding for the reasons above given is overruled.

We are of opinion that the Act of the General Assembly of April 15, 1885, *Vol.* 17, *Laws of Del., Ch.* 575, is valid and constitutional.

Order answering the certified question in the affirmative.