WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under Agreement with Walter S. Carpenter, Jr.,
Plaintiff,

*vs.*

WALTER S. CARPENTER, JR., W. SAMUEL CARPENTER, III and CLIFTON CENTER, INC., a corporation of the State of Delaware,
Defendants.

*New Castle, Aug. 19, 1960.*

*William S. Potter,* of Berl, Potter & Anderson, Wilmington, for plaintiff.

*James T. McKinstry,* of Richards, Layton & Finger, Wilmington, for defendant Walter S. Carpenter, Jr.

*E. N. Carpenter,* II, of Richards, Layton & Finger, Wilmington, for defendants W. Samuel Carpenter, III, and Clifton Center, Inc.

MARVEL, Vice Chancellor: On November 21, 1941, the defendant, Walter S. Carpenter, Jr., as trustor, entered into an agreement with Wilmington Trust Company under the terms of which he turned over to such corporation designated securities to be held in trust for the immediate benefit of his son, W. Samuel Carpenter, III, the agreement providing that such trustee would manage the property thereby

placed in trust and pay the net income thereof to such primary and sole trust beneficiary during his lifetime.

Paragraph 4 of the agreement provides, inter alia, as follows:

· "The interest of any beneficiary hereunder, in either the income or principal of any trust hereunder, shall not be anticipated, alienated, or in any other manner assigned or transferred by such beneficiary; and such interest shall be exempt from execution, attachment, distress for rent, and other legal or equitable process which may be instituted by or on behalf of any creditor or assignee of such beneficiary."

Notwithstanding such provision against assignment, alienation and the like, W. Samuel Carpenter, III, on December 23, 1959 executed a grant, conveying to the defendant, Clifton Center, Inc., a charitable corporation, ten per centum of his life interest in said trust fund, and on the same date Clifton Center, Inc. accepted such assignment.

The settlor, who is also president of Clifton Center, Inc. and who had on the date indicated accepted the beneficiary's gift on behalf of such corporation, wrote the trustee on February 11, 1960 as follows:

"When I created Trust No. 3134 in 1941 I thought then and think now that I parted with all interest in the trust property, and that I had no further rights with respect to it. My acceptance of Sam's assignment on behalf of Clifton Center was solely in my capacity as president of Clifton Center, and is not to be construed as consent by me, as the grantor of this trust, to the assignment. My only desire is that the trust be administered as required by law."

The assignment here under attack was purportedly made under authority of the terms of § 3536(b) of *Title* 12 *Del.C.*, which became effective on October 1, 1959 as an amendment to § 3536 of the same title. The section amended, which was enacted in 1933, authorized what are commonly known as spendthrift trusts, and makes every assignment by a beneficiary of his interest in a valid spendthrift trust void. The 1959 amendment provides as follows:

"(b) Notwithstanding the provisions of subsection (a), a beneficiary entitled to receive all or a part of the income of a trust shall have the right to assign gratuitously in writing, at any time or from time to time, a stated fraction or percentage of his entire remaining income interest in such trust to the State of Delaware, or to any corporation, church, community chest, fund or foundation described in Paragraph (5) of Section 1118, *Title* 30 of the *Delaware Code,* and such assignment shall be valid and binding on all parties irrespective of any restrictions on assignment contained in the instrument creating or defining the trust; provided, however, that this subsection shall not authorize a beneficiary of such a trust to reduce any part of his income interest which is subject to such restrictions on assignment below 50% of what such interest would be if no assignments were made hereunder. Any interest assigned hereunder, together with a corresponding portion of the corpus of the trust, shall be treated as a separate share and thereafter no provision of the trust permitting invasion of corpus for the benefit of the assignor shall be exercisable with respect to such share."

The trustee having reasonable doubts as to the constitutionality of such amendatory statute, takes the position that the action taken by the beneficiary in reliance thereon may have impaired the trust contract and may also have in effect taken property without due process. It seeks instructions from the Court as to its authority and obligation as to the beneficiary's purported assignment. The trustee concedes that the statute is effective as to any spendthrift trust created subsequent to its enactment but insists that it may not be applied retroactively to a 1941 trust.

The basic proposition on which plaintiff rests the first portion of its argument is that a donor may properly condition his gift by causing a trust agreement to contain a contractual provision that the property therein transferred shall not be alienated or in any manner assigned by the beneficiary and that a donor may insist that such contractual arrangement not be impaired by legislative act. Compare *Trustees of Dartmouth College v. Woodward,* 4 *Wheat.* 518, 17 *U.S.*

518, 4 *L.Ed.* 629 [1] and *Coolidge v. Long,* 282 *U.S.* 582, 51 *S.Ct.* 306, 75 *L.Ed.* 562, and see *State v. Caldwell,* 181 *Tenn.* 74, 178 *S.W.2d* 624, 151 *A.L.R.* 1410.

In the last cited case, however, the spendthrift interest which the Supreme Court of Tennessee protected from seizure by the state as a creditor (which had proceeded under a recently enacted statute permitting such a suit) was that of the beneficiary, a spendthrift interest which had clearly vested under the established law of Tennessee, the court holding that the amendment to the preexisting spendthrift trust statute violated not only the contract clause but the due process clause of the Federal Constitution, Amend. 14.[2]

Here, on the other hand, what is sought to be protected is not the beneficiary's interest but the alleged contract interest of the settlor in property which he divested himself of in 1941 as well as an alleged contract interest of the trustee under the trust agreement. It can hardly be contended that the beneficiary is a formal party to the contract, although he is the person for whose primary benefit the contract was made, but in any event he is the one who has acted voluntarily under the statute in contrast to the resisting debtor beneficiary in *State v. Caldwell, supra.*

While the contract here involved is not a unilateral transfer of property in trust but a formal contract between a trustor and trustee, and the trustee under its provisions clearly made certain commitments, namely to pay income therefrom arising and, if necessary, principal, for the beneficiary's support and maintenance for life, as well as other contractual commitments such as not treating liquidating dividends as income, in my opinion this does not mean that the spendthrift provision contained in paragraph 4 of the trust agreement, which finds its

---

1. The contract involved in this case was, of course, that implied between a testator and the sovereign state.

2. There are on the contrary numerous instances where widows, children and creditors have been permitted to reach a spendthrift interest not only by express statutory provision but by judicial interpretation of the purpose of the trust, *Griswold, Spendthrift Trusts, Chap. VI.*

authority in the original terms of § 3536,[3] may not be affected by a proper legislative amendment to such section.

There is nothing sacrosanct about legal devices which tend to impede the free alienation of property. In fact, several such devices over the centuries have ultimately been thwarted by rules of law adopted to prevent entailment and the like and to encourage the free alienation of property. Here, the beneficiary of a trust has taken advantage of a statute designed to permit one in his position to direct his trustee to consummate a gratuitous, charitable assignment, and despite the reasoning of decisions such as *In re Kirby's Will*, 113 *App.Div.* 705, 100 *N.Y.S.* 155, which involved a special act designed to permit a spendthrift trust beneficiary to dispose of his interest, it is difficult for me to grasp plaintiff's contention that the statute here involved permits a constitutionally forbidden impairment of contract. As stated by Dean Griswold in his treatise on *Spendthrift Trusts* (2nd ed.) § 393, p. 487:

> "Why such a statute should be unconstitutional seems impossible to understand. Certainly the beneficiary is injured in no way; nor does he object. The trustee is not deprived of any interest by the assignment of the beneficiary. And the settlor cannot be invalidly deprived of property of which he is no longer owner, especially in the usual case where he is dead when the issue arises."

The settlor in the case at bar is, of course, alive and a party to this litigation, however, he has not actively objected to the assignment merely desiring "\* \* \* that the trust be administered as required by law \* \* \*". But even were the settlor actually seeking to enforce an alleged contractual duty, I would decline to deny the beneficiary his claimed right to assign income under the statute. Compare *Brearley School v. Ward*, 201 *N.Y.* 358, 94 *N.E.* 1001, 40 *L.R.A.*, *N.S.*, 1215.

3. In *Wilmington Trust Co. v. Wilmington Trust Co.*, 21 *Del.Ch.* 102, 180 *A.* 597; 21 *Del.Ch.* 188, 186 *A.* 903, 906, the validity of a spendthrift trust antedating the statute was apparently assumed, however, the spendthrift provisions were referred to in the opinion on rehearing as " \* \* \* of interest only to creditors and assignees."

While the cited case involved a testamentary trust made spend-thrift by statute, and the court could not in any event visualize an existing contract with a dead man, the principle therein enunciated applies here because the language of paragraph 4 of the contract obviously finds its source and authority in the 1933 statute. Again, as stated by Griswold in his treatise *supra*, § 391, p. 483-4:

> "There seems to be little ground upon which the correctness of the decision in *Brearley School v. Ward* can be doubted. A statute restraining the alienation of the interest of the beneficiary of a trust is closely analogous to an exemption law, and it has been decided repeatedly that there is no vested right in statutory privileges and exemptions. One of the points which has been urged against the constitutionality of a statute affecting the alienation of prior created spendthrift trusts is that the obligation of some sort of a contract between the settlor and the state or the trustee or someone else may be impaired. This argument, of course, will not stand analysis. There is no contract; it certainly cannot be said that the enactment of legislation by a state through its legislature constitutes an offer for a contract which is accepted by the creation of a trust."

I conclude that § 3536(b) of *Title* 12 *Del.C.* is not unconstitutional on the grounds that it is a statute which permits the impairment of a contract.

Plaintiff's second contention is, as noted above, that § 3536(b) is invalid for the further reason that it permits the taking of property without due process. This argument is premised on an ancient maxim that, "cujus est dare ejus est disponere", the purport of which is that so long as a donor violates no law in making a gift he may condition his bounty as suits himself, *Re Moulton's Estate*, 233 *Minn.* 286, 46 *N.W.2d* 667, 24 *A.L.R.2d* 1092; *Morgan's Estate*, 223 *Pa.* 228, 72 *A.* 498, 499, 25 *L.R.A., N.S.,* 236; and *In re Borsch's Estate*, 362 *Pa.* 581, 67 *A.2d* 119, 122.

There is no doubt but that innumerable trusts have been upheld on the basis of the dogmatic principle above cited, however, such rule clearly has no general application in the world of today in the light of

numerous other rules which control and limit the power to make gifts, and I fail to see any logical reason why the legislature may not by the adoption of such a statute as § 3536(b) validly permit the alienation of property under its provisions notwithstanding the donor's original purpose.

As stated in *Scott on Trusts, Vol. II,* § 200.1:

"§ 200.1.   The Settlor and His Successors in Interest. Where a trust is created by will, or where a trust is created inter vivos and the settlor has subsequently died, his heirs or personal representatives cannot maintain a suit to enforce the trust. Where a trust is created inter vivos and the settlor is still alive, it would seem that he cannot maintain a suit to enforce the trust. If the settlor has retained no interest in the trust property, the duties of the trustee are owing not to him but to the beneficiaries of the trust.   If the settlor is himself a beneficiary of the trust, he can of course maintain a suit against the trustee for the protection of his interest, but in such a case he is suing as beneficiary and not as settlor.   Nor can the settlor maintain an action at law against the trustee for breach of contract."

Also see § 200, *Restatement of the Law, Trusts* (2nd) where it is stated:

"No one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin and obtain redress for a breach of trust."

While it may well be that this rule should not be applied in a case concerned with an internal contractual dispute between a settlor and a trustee as to administrative details of their agreement, I see no reason why it should not control in dismissing a trustee's attack on a statutorily authorized assignment by the beneficiary of income accrued in the hands of the trustee.

Concededly, cases such as *In re Borsch's Estate, supra,* in which the Supreme Court of Pennsylvania in a four to three decision struck down a statute authorizing a beneficiary of a spendthrift trust to release or disclaim the trust, thus placing the property in the hands of a

remainderman and permitting the trust to be terminated, clearly hold that while constitutional provisions of due process of course cannot be relied on to protect a donor's claim of present ownership in property (in that case a decedent), they do protect "* * * the property right possessed by the testator or donor, to have enforced the limitations and restrictions affixed to the gift."

Even the court minority refused to quarrel with the maxim "cujus est dare ejus est disponere", which has been applied in Pennsylvania for over one hundred years, but held it not incompatible with the right of a beneficiary to refuse a gift altogether.

Delaware, on the other hand, does not have any case law precisely based on such maxim,[4] and I decline to apply it here to strike down statutorily authorized action taken by the beneficiary of a spendthrift trust as to which the settlor's "* * * only desire is that the trust be administered as required by law."

I accordingly conclude that no property right of the settlor has been taken as a result of the beneficiary's assignment under authority of § 3536(b), and on notice plaintiff will be directed to carry out the beneficiary's assignment to the defendant, Clifton Center, Inc., dated December 23, 1959.

---

4. In *Equitable Trust Co. v. Snader,* 17 *Del.Ch.* 203, 151 *A.* 712, 716, however, this Court stated in emphasizing the importance of a settlor's intent: "Considerable liberality, however, is to be indulged in favor of the donor's wishes, for after all the owner of property has, as he ought to have, the right to attach conditions to his bounty which within reasonable limits should be respected." The case of *Tharp v. Fleming,* 1 *Houst.* 580, relied on by plaintiff was, of course, overruled by Trustees of *New Castle Common v. Gordy,* 33 *Del.Ch.* 334, 93 *A.* 2d 509, 40 *A.L.R.2d* 544.