166 A.2d 135 (1960)
Paul SANTOW, Stephania Santow, Joseph S. Dayton, Harry H. Lambert and G. Lester Cleaver, constituting the Levy Court of New Castle County, and Bayard A. Vandergrift, William R. Manning, John F. Porter, Thomas E. Brittingham, III and Harvey G. Cole, constituting the New Castle County Zoning Commission, Defendants-below, Appellants,
v.
Emanuel M. ULLMAN and Louis Bachman, Plaintiffs-below, Appellees.
Supreme Court of Delaware.
November 4, 1960.
*136 SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
Joseph Donald Craven, Wilmington, for appellants Paul Santow and Stephania Santow.
Clarence W. Taylor, Wilmington, for appellants Levy Court of New Castle County and the New Castle County Zoning Commission.
Frank J. Miller (of Foulk, Walker, Miller & Wakefield), Wilmington, for appellees.
SOUTHERLAND, Chief Justice.
This is a suit in equity to enjoin an alleged violation of the New Castle County Zoning law. The essential question concerns the computation of the time required to give notice of the hearings before the Zoning Commission and before the Levy Court.
The facts are these:
The defendants below, the Santows, are the owners of a tract of land of 4.22 acres situated at the intersection of the Newport Gap Pike and the Old Weldin Road in Mill Creek Hundred. They purchased it in December 1955. It was zoned R-2, i. e., "Agricultural and General Purposes". In April 1956 the Santows applied to the Levy Court for a re-zoning of one-half of the tract as C-2, i. e. "Roadside Business". It was at that time their intention to build a gift shop on the area to be re-zoned.
The New Castle County Zoning laws vest ultimate authority in zoning matters in the Levy Court. But the Zoning Commission, a body appointed by the Levy Court, is required to consider and make recommendations to the Levy Court with respect to the original zoning of land in the county and with respect to any changes in zoning. See 9 Del.C. c. 26.
Accordingly, the Levy Court referred the Santow application to the Zoning Commission. As required by law, the Levy Court gave published notice on April 18, 1956, of a hearing on the application to be held April 25. The application was approved and on May 17, 1956 the Levy Court was so advised. The Levy Court gave published notice on May 17 (and subsequently) of a hearing on the proposed change to be held before it on June 1, 1956. The application was thereafter approved.
In 1958 the Santows built a home on the half of their tract zoned R-2.
In February, 1960, the Santows began work upon the construction of four stores on the other half of their tract, re-zoned C-2. This is a non-conforming use under the former zoning classification.
The plaintiffs below, Ullman and Bachman, own residential property in the neighborhood. *137 On February 16, 1960, they filed suit to enjoin the erection of the proposed structures. They asserted two contentions:
(1) That insufficient notice had been given of the Zoning Commission hearing and also of the Levy Court hearing.
(2) That no proper description of the tract to be re-zoned had been furnished either to the Zoning Commission or to the Levy Court at the time when the hearings were held.
The Santows answered, denying these allegations.
Plaintiffs moved for a restraining order and preliminary injunction. On April 12 the Vice Chancellor issued a restraining order and a rule to show cause. The motion for a preliminary injunction was heard on the pleadings and on affidavits. The Vice Chancellor held that the notices were insufficient in law and the attempted rezoning void. Reargument was granted to hear the parties on a contention that plaintiffs were guilty of laches. This additional defense was rejected and on May 24 a preliminary injunction was ordered. On the same day the Levy Court and the Zoning Commission were made parties to the suit.
All the defendants appeal.
The question of the sufficiency of the notices turns on the construction to be placed on the language of the applicable statutes.
9 Del.C. § 2611(b), relating to the hearing before the Zoning Commission, provides in part:
"With respect to any proposed changes, the Zoning Commission shall hold at least one public hearing, notice of which hearing shall be published at least seven days before the date of the hearing in a newspaper of general circulation in the county."
9 Del.C. § 2611(c), relating to the Levy Court hearing provides in part:
"Before finally adopting any such changes, the Levy Court shall hold a public hearing thereon, at least 15 days' notice of the time and place of which shall be given by at least one publication in a newspaper of general circulation in the County".
As above stated, the notice of the Zoning Commission hearing was published on April 18; the hearing was held April 25. The notice of the Levy Court hearing was published May 17; the hearing was held June 1.
The general rule for the computation of time under a statute, in the absence of anything showing a contrary intent, is that the first day should be excluded but the day on which the act is to be done should be included. Standard Scale & Supply Corp. v. Chappel, 16 Del.Ch. 331, 336, 141 A. 191; Simkin v. Cole, 32 Del. 271, 122 A. 191. This rule is so well settled that it is embodied in the rules of our trial courts. Court of Chancery Rule 6, Del.C. Ann.; Superior Court Rule 6 (Civil Rules); and Superior Court Rule 45 (Criminal Rules). If the general rule is applied, the notices were in time.
But there is a series of decisions of our Superior Court holding that if the statute fixing the time of notice uses the phrase "at least" or "not less than" in specifying the number of days required for notice of an act to be done, or for service of process, the days required must be "clear days". This is to say that "at least seven days' notice" means notice must be given not later than the eighth day before the time of the act to be done. See the following cases approving this exception to the general rule:
Robinson v. Collins, 1 Har. 498 ("at least four days before the day appointed for appearance"); Warrington v. Tull, 5 Har. 107 ("not less than five days after the day of the date of the summons"); In re Public Roads, 5 Har. 174 ("at least ten days before the sitting of the court"); Chambers *138 v. Jones, 1 Penn. 209, 39 A. 1098 ("such rule shall be served at least two days before the expiration thereof"); State ex rel. Content v. Bay State Gas Co., 4 Penn. 214, 221, 57 A. 291, 292 ("at least six days before the return of the process"); Jones v. Hinderer, 7 Boyce 516, 108 A. 737 ("at least four days before the day of appearance"). In MacCrone v. American Capital Corp., D.C., 51 F.Supp. 462, the federal district court followed the rule in a case involving a notice requirement of the General Corporation Law. (For convenience, we shall call these decisions "the exception cases".)
There is, however, one contrary holding. In Underwood v. Jeans, 4 Har. 201, the statute required notice of a sheriff's sale to be given "at least ten days before sale". Notice in one locality was posted on September 30 for a sale on October 10. It was held sufficient.
Counsel for the Levy Court suggests that the difference in wording of the statutes accounts for this decision. The language of the statutes in the exception cases is "before the date" or "before the day" appointed for the act to be done; whereas in the Jeans case the language of the statute was "before sale". And, indeed, in Simkin v. Cole, supra, Judge Harrington cited the Jeans case, which has never been expressly disapproved, as authority for the general rule, and cited the other cases as authorities for the exception.
Hence it is suggested that if the rule of the Jeans case be applied to the language of § 2611(c), relating to the Levy Court hearing, the notice was sufficient, because the language of that sub-section refers to "15 days' notice of the time and place" of the hearing, and does not say "15 days before the date of the hearing".
We think that to apply different rules to the two sub-sections would be quite unreasonable. Moreover, the distinction is too tenuous to constitute a difference. Either the Jeans case is wrong, or the other cases are wrong.
The Vice Chancellor naturally and properly followed the exception cases. If they are to be disapproved, this Court should take the responsibility.
The list of exception cases appears impressive. But, as will be seen, there are very weighty objections to the soundness of these decisions. None of them contains any real discussion of the basis of the exception, nor any satisfactory reason why the addition of the phrase "at least" is sufficient to indicate a legislative intent to depart from the general rule. Why should "at least seven days' notice" mean, in common parlance, eight days' notice? Our exception cases derive from Robinson v. Collins, supra. The memorandum of the decision contains only the pronouncement that the service "must be exclusive of both the day of the service and the day of return".
No authority is cited, but it is permissible to surmise that it followed the English precedents. Our early opinions leaned heavily upon the English authorities. See, for example, the footnotes to Randel v. President, etc., Chesapeake & Delaware Canal Co., 1 Har. 151, 178-180.
Robinson v. Collins was decided in 1835. In 1821 the Court of King's Bench, in Zouch v. Empsey, 4 B. & Ald. 522, 106 Eng. Rep. 1028, had held that "at least fourteen days' notice" meant fourteen clear days. There was no discussion of the point.
In 1838 the same Court had before it the same question, i. e., the construction of the phrase "fourteen days at least". The point was fully argued. The Court, with marked reluctance, adhered to the rule in Zouch v. Empsey, supra, though solely on the ground of adherence to precedent. Three of the four justices expressed their disapproval of the rule. Littledale, J., said; "* * * it appears to me that a day is a day, whether `at least' be added or left out". Coleridge, J., said: "* * * on principle, I should be of a different opinion." Denman, C. J., expressed "regret" at the decision they had to pronounce. It is *139 fair to say that the soundness of the earlier English case (whether or not it was the basis of the holding in Robinson v. Collins), is open to question. Certainly, the comments of the judges in the later case suggest the desirability of examining the reason for the "exception" rule.
Now, the prefixing of the phrase "at least" before the number of days required simply means, on its face, that the specified time (e. g., seven days) is the minimum time. Suppose a statute provides that "a minimum of seven days' notice" shall be given. Would it be contended that it required seven clear days? The only difference that we can see between "seven days' notice" and "at least seven days' notice" is that in the latter phrase there is the implication that a longer notice may be given if desired.
The suggestion that the phrase "at least" evidences a specific legislative intent to require a longer time than that required by the general rule we cannot follow. If the legislature intends to depart from the general rule it may readily find appropriate language to indicate an intention to do so. Thus in the case of In re Fortner, 2 Har. 461, the statute construed provided that no imprisoned debtor should be detained longer than "five days from the date of such commitment inclusive". 8 Del. Laws, 178. The court, of course, ruled that the day of commitment must be counted. So, again, if seven clear days are to be required, it is simple to use the word "exclusive" in an appropriate context.
When we examine the decisions of other American jurisdictions, we find that they are divided. But we think that the better reasoned cases reject the view that the phrase "at least" changes the general rule for the computation of time.
In Barron v. Green, 13 N.J.Super. 483, 80 A.2d 586, 589, the statutory phrase, which related to the filing of certain election petitions, was: "at least 40 days prior to" the election. N.J.S.A. 40:75-3. The court reviewed the New Jersey decisions and held that the ordinary rule for computation of time applied.
In Luedke v. Todd, 109 Colo. 326, 124 P. 2d 932, the election statute provided that a certificate of nomination should be filed "not less than forty-five (45) days before election". Colo.Laws 1941, c. 124, § 7. The Supreme Court quoted from and followed a prior decision to the effect that the general rule applied. That prior decision had noted the criticism of the "exception" rule by the judges in the English case of The Queen v. The Justices, supra, and had cited their comments with approval.
In State ex rel. Jones v. Board of Deputy State Supervisors, 93 Ohio St. 14, 112 N.E. 136, 138, the Supreme Court of Ohio held, in a similar case, that the general rule applied. The Court said:
"The use of the words `at least,' prefixed to the number of days named, cannot in any wise affect the result or the method of computation."
The New York cases are to the same effect. See H. E. & S. Transportation Corporation, 271 N.Y. 239, 2 N.E.2d 642.
These cases seem to us to announce a sound and desirable rule. Why should the computation of time depend upon the use or non-use of the phrase "at least"? If it be said that the words are inserted with a purpose, it may be replied that the purpose might be to anticipate a possible technical objection that a longer notice than the prescribed number of days would not be proper. This suggestion was made by counsel in the case of The Queen v. The Justices, supra. It is a technical answer to a technical construction.
In any event the sufficient answer is that the natural import of the phrase "at least" is, as above stated, to express the idea of a minimum and nothing more. It does not in itself affect the general rule for the computation of time.
We also think that the rule of our "at least" cases is an undesirable one in *140 practice. In modern times we have numerous administrative bodies, usually composed of non-lawyers, who may be often required to attend to administrative details concerning notices, hearings and so forth. The present distinction is probably confusing. Thus it is shown in this case that in 1959 and 1960 the Levy Court held eleven hearings under the zoning law, and that in each case the period of notice was fifteen days, computed according to the general rule. We do not think that in the light of our decisions this fact constitutes an administrative interpretation entitled to weight. But we do think that it supports our view that it is desirable, so far as possible, to have one simple rule for the computation of time.
We are quite aware that the exception to the general rule has stood, almost unchallenged, for a very long time. But we cannot find that any real examination of the logic of the rule was ever made in any of our decisions. The first one, Robinson v. Collins, supra, is a mere "ipse dixit." The succeeding decisions followed it without question or critical examination.
Nevertheless, a question of stare decisis is presented. This is a salutary rule, and will be given full effect in a proper case. See Trustees of the New Castle Common v. Gordy, 33 Del.Ch. 334, 93 A.2d 509, 40 A.L.R.2d 544; Flait v. Mayor & Council of Wilmington, 48 Del. 89, 90, 99, 97 A. 2d 545. The Gordy case involved the power of the General Assembly to authorize the sale of lands in a charitable trust. A prior decision of the Supreme Court had upheld this power, and we applied stare decisis and again sustained the power. Titles to real estate would have been adversely affected by a contrary holding. The Flait case involved the rule of municipal immunity from liability for torts in the performance of governmental functions. Two prior Supreme Court decisions, as well as numerous Superior Court cases, had sustained the doctrine. It was a matter of substantive law. Although disagreeing with the immunity rule, we again applied stare decisis.
On the other hand, in American Insurance Co. v. Iaconi, 47 Del. 167, 89 A.2d 141, 36 A.L.R.2d 604, we declined to apply it, and disapproved a decision of the Superior Court that had stood unchallenged for many years. We pointed out that stare decisis has little application to a case in which an appellate court is examining a decision of a lower court. 47 Del. 189, 89 A.2d 152.
In the instant case the exception to the general rule for computation of time, based on the use of the phrase "at least", has never been approved by the Supreme Court, or by the Court in Banc. It is not a rule of property. Indeed, it is little more than a rule of practice. We think that we should not apply stare decisis.
Accordingly, the Delaware cases upholding the exception are disapproved.
It follows that the notices in this case were legally sufficient, and that the order awarding the preliminary injunction on the basis of insufficient notice must be reversed.
The case is remanded to the Court of Chancery for further proceedings.