Helen SCARBOROUGH et al., Plaintiffs,

v.

The MAYOR AND COUNCIL OF the TOWN OF CHESWOLD, an incorporated municipality, et al., Defendants.

Court of Chancery of Delaware, Kent.

Jan. 23, 1973.

Roy S. Shiels, Brown, Shiels & Barros, Dover, for plaintiffs.

Nicholas H. Rodriguez, Schmittinger & Rodriguez, Dover, for defendants.

DUFFY, Chancellor:

Plaintiffs, residents of the Town of Cheswold, an incorporated municipality, seek to enjoin construction of a drive-in theatre by the corporate defendant, Midway Enterprises, Inc.

In September 1972 the Town Council approved a zoning change which would have permitted construction of the theatre. Plaintiffs originally alleged that the change was invalid because the Council had failed to follow mandatory procedures for the amendment of municipal zoning ordinances, 22 Del.C. § 307. But the Town says, and this is undisputed, that it has never followed the statutory procedures required for enactment of a zoning ordinance and thus it does not have a valid zoning ordinance. On this state of affairs, the issue now before the Court is whether the Town is governed by the Kent County zoning ordinance or whether it is without zoning.

Plaintiffs contend that the County ordinance must be construed in such a way that it applies to the Town under an agricultural-conservation zoning classification district. Drive-in theaters are prohibited in such districts. They say that an interpretation of the ordinance and the enabling statutes which permits Cheswold to remain an island without zoning would sanction "spot" or "piecemeal" zoning and that is inconsistent with the legislative intent and an unconstitutional denial of equal protection of the laws.

Defendants reply that Cheswold is indeed an unzoned enclave and this is consistent with the General Assembly's intent that incorporated municipalities in the County be free to zone or not as they choose; they say that such a result is not based upon arbitrary and unconstitutional discrimination but rather expresses a reasonable and legitimate State policy in support of independent local government.

The issue is before the Court on plaintiffs' application for a preliminary injunction.

### A.

Defendants make two procedural arguments which must be considered.

First, they contend that plaintiffs have not pursued an appeal to the Kent County Board of Adjustment and the doctrine of exhaustion of administrative remedies therefore bars them from judicial relief.[1] But this argument does not take into account 9 Del.C. § 4919(d) which provides:

> "In case any building or structure is or is proposed to be erected, . . . or used, or any land . . . is proposed to be used in violation of this chapter . . . any owner of real estate within the District in which such building, structure or land is situated, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement, or any other appropriate action or actions, proceeding or proceedings to prevent, enjoin, abate or remove such unlawful erection, construction, reconstruction, alteration, maintenance or use."

This statute is pertinent because plaintiffs' legal theory is that the County ordinance

---

1. The enabling legislation for zoning in Kent County is contained in 9 Del.C. § 4901 etc.; § 4913 requires the Levy Court to appoint a Board of Adjustment and § 4916(a) provides:
   "Appeals to the Board of Adjustment may be taken by any person refused a building permit, or from the decision of any administrative officer or agency based upon or made in the course of the administration or enforcement of the provisions of the zoning regulations. Appeals to the Board of Adjustment may be taken by any officer, department, board or bureau of the county affected by the grant or refusal of a building permit or by other decision of an administrative officer or agency based on or made in the course of the administration or enforcement of the provisions of the zoning regulations."

applies to Cheswold and construction of the theatre would be in violation thereof. And it is clear that the General Assembly intended that the administrative remedy not be exclusive of the judicial remedy; therefore, the doctrine of exhaustion of administrative remedies does not apply. 2 Am.Jur.2d, Administrative Law § 598. In addition, that doctrine contemplates that there be available to a plaintiff an administrative remedy substantially equivalent to that which he seeks in court. The Board of Adjustment may have power to correct errors in the administration of the zoning ordinance, 9 Del.C. § 4917, but it does not have power to enjoin construction by defendants (which is the relief sought by plaintiffs); thus there is not an equivalent administrative remedy available to plaintiffs. See 3 Rathkopf, Zoning and Planning § 9.

▪ Second, defendants argue that mandamus and not injunction is the proper remedy for plaintiffs to pursue. The granting of an injunction, however, is generally recognized as an appropriate form of relief to protect interested parties threatened by a violation of a zoning ordinance, Rathkopf, supra; 58 Am.Jur., Zoning, §§ 188–89; and, indeed, § 4919(d) specifically authorizes injunctive relief. Reinbacher v. Conly, 37 Del.Ch. 288, 141 A.2d 453 (1958), on which defendants rely, is not inconsistent with this principle for two reasons: first, as the Vice Chancellor specifically stated in that case, the statute (concerning New Castle County) was "silent on equitable relief," but here § 4919(d) authorizes it; second, that action sought to compel public officers to perform a ministerial duty and thus mandamus was the appropriate remedy, while this action now seeks to enjoin private persons from constructing a theatre. Moreover, the Court, in a second opinion in *Reinbacher*, 141 A.2d 455, concluded that injunctive relief was indeed appropriate if the action of the Levy Court was "flagrant 'spot zoning' or otherwise

capricious and arbitrary . . . ." It should also be emphasized that this Court held in a later case that injunctive relief is a proper means of correcting zoning violations in general and preventing spot zoning. Ullman v. Santow, 39 Del.Ch. 130, 160 A.2d 582 (1960), rev'd on other grounds, 39 Del.Ch. 427, 166 A.2d 135 (1960).

I am satisfied that where, as here, plaintiffs seek to prevent construction upon or use of land alleged to be in violation of a zoning ordinance, an action for injunctive relief is appropriate.

I turn now to the substantive questions.

### B.

9 Del.C. § 4901 provides in part:

"The Levy Court may, in accordance with the conditions and procedure specified in this chapter, regulate . . . the uses of land . . . in any portion or portions of Kent County which lie outside incorporated municipalities, *or incorporated municipalities without zoning provisions* . . . ."[2]

The parties agree that the underscored portion of the statute means that the Levy Court may provide for zoning within incorporated municipalities which are without zoning regulations, Cheswold is an incorporated municipality which is without zoning provisions. It is therefore undisputed that the Levy Court has the power to apply County zoning ordinances within Cheswold.

The Kent County zoning ordinance is titled, "Zoning Ordinance For the Unincorporated Area Of Kent County, Delaware". While the title is directed to the unincorporated area, Art. I, § 2 states:

"This Ordinance shall apply to the unincorporated territory of Kent County, Delaware, and may apply to incorporated municipalities, if by appropriate action

---

2. Emphasis is added to this and all other quotations unless otherwise indicated.

of its governing body such municipality elects to be included in its application . . . ."

Plaintiffs argue that if the County chooses to zone at all, it must regulate all areas within its grant of power, including incorporated municipalities which do not have local zoning laws. They contend that to hold otherwise would result in "spot" or "piecemeal" zoning which is both contrary to the intent of the General Assembly and unconstitutional as a denial of equal protection of the laws.

Following this argument to its conclusion, plaintiffs say that because the County is bound to regulate the zoning within all areas over which it has authority, failure to do so within the Town of Cheswold must be regarded as an error or omission under Art. I, § 4 of the zoning ordinance, which provides in part:

" . . . If, because of error or omission in the Zoning District Map, any property in the jurisdiction of this Ordinance is not shown as being in a zoning district, the classification of such property shall be classified A–C Agricultural-Conservation until changed by amendment."

In short, plaintiffs argue that the failure to include Cheswold within a zoning district is the sort of "error" or "omission" contemplated by § 4, and therefore the Town should be classified as A–C.

The parties have discussed and differed as to the meaning of "spot zoning" and "piecemeal zoning", so these must be defined for present purposes.

The authorities generally agree that the phrase "spot zoning", whether regarded as a term of art or of opprobrium, is used to describe a situation in which a relatively small parcel of land is singled out by amendment of an existing ordinance for treatment which differs from that of other land in the same zoning district. 1 Rathkopf, supra, p. 26–1; 1 Anderson, American Law of Zoning, § 5.04. The hallmark of spot zoning is the extension of special treatment, usually preferential, to the owner of a small parcel of land which differs in no reasonable regard from that of his neighbors.

"Piecemeal zoning", on the other hand, refers to a situation in which the zoning authority, in enacting an original ordinance, declines to regulate the entire area within its jurisdiction. 1 Rathkopf, supra, p. 26–1; 1 Anderson, supra, § 5.14; 1 Yokley, Zoning Law and Practice, § 4–15.

■ In my view, the case does not in any way fit the definition of "spot zoning". But, what the Levy Court did can be said to be "piecemeal zoning". It does not follow, however, that simply saying that makes it bad as a matter of law. And our inquiry is not whether the County may engage in piecemeal zoning generally; it is whether the County may decline to regulate zoning in incorporated municipalities without zoning ordinances.

Courts which have condemned piecemeal zoning have done so on the ground that such zoning was (1) in violation of the intent of the legislature as expressed in the enabling act, or (2) unconstitutionally discriminatory and a denial of equal protection of the laws or used as a taking of property without due process of law.[3] See 1 Anderson, supra, § 5.14; 58 Am.Jur., Zoning § 34; Annot., 165 A.L.R. 823.

I must therefore determine whether Kent County may decline to exercise all power granted to it under the enabling act, and if so, whether that result is constitutionally permissible.

### C.

When piecemeal zoning has been held to violate the enabling act, it has generally

---

3. Piecemeal zoning was referred to in Mayor and Council of Wilmington v. Turk, Del.Ch., 129 A. 512 (1925), but the validity thereof was not before the Court.

been because the legislation required a "comprehensive" plan, and the ordinance in question did not effect such a plan. 1 Anderson, supra, § 5.14. In such cases, the zoning authorities typically enacted a single ordinance which purported to impose particular restrictions upon a relatively small area of the jurisdiction. See, e. g., Alabama Alcoholic Beverage Control Bd. v. Birmingham, 253 Ala. 402, 44 So.2d 593 (1950); Texarkana v. Mabrey, 94 S.W.2d 871 (Tex.Civ.App.1936). On the other hand, piecemeal zoning has been permitted where it has been found to be consistent with the enabling legislation. County Com'rs of Anne Arundel County v. Ward, 186 Md. 330, 46 A.2d 684 (1946).

■ The Kent County zoning ordinance as a whole is a thorough and complete plan, "comprehensive" both as to geographic scope and land use. The question is, therefore, simply whether the General Assembly intended that the County might decline to regulate within incorporated municipalities. I conclude that it did.

The enabling act itself is permissive in several key provisions. Thus, 9 Del.C. § 4901 says that, "the Levy Court *may* . . . regulate"; § 4902 provides that "the Levy Court *may* divide the territory of Kent County into districts or zones . . . and within such districts, *or any of them, may* regulate". Although not conclusive, the word "may" is generally construed to indicate a discretionary power. Shulman v. Zoning Bd. of App. of City of Stamford, 154 Conn. 426, 226 A.2d 380 (1967). And the phrase "or any of them" makes sense only if it is considered to express the view of the General Assembly that the Levy Court might choose to regulate in fewer than all districts in the County. The phrase would otherwise be mere surplusage.

Considering the narrower question of the regulation of zoning in incorporated municipalities, I conclude that the entire legislative scheme relating to the regulation of land use in Kent County expresses an intent of the General Assembly that incorporated municipalities be left to regulate their own land use. That is found in both the enabling act for zoning, 9 Del.C. § 4901 etc., and in 9 Del.C. § 4801 etc., which deals with regional planning. The two are, of course, intimately related. In fact, upon adoption of the final Kent County zoning ordinance, the Zoning Commission ceased to exist as an independent body and was absorbed into the Kent County Regional Planning Commission and thereafter exercised the powers of the Zoning Commission. 9 Del.C. § 4904(c).

■ Thus, these two chapters are *in pari materia*, treating of the same general subject, and reference may be made to the one in construing the other. DuPont v. Mills, Del.Supr., 9 W.W.Harr. 42, 196 A. 168 (1937); 2 Sutherland, Statutory Construction, §§ 5201–02. And Chapter 48 most clearly distinguishes between incorporated and unincorporated areas of Kent County.

Thus, 9 Del.C. § 4802, which states the purposes of the Regional Planning Commission, provides:

"For the purpose of promoting health, safety, prosperity and general welfare as well as for the purpose of securing coordinated plans . . . *in that portion of Kent County which is not included within the corporate limits of any city or town, unless any territory within such corporate limits is included upon request made by the governing body of authority of any such city or town* . . . a department known as the Regional Planning Commission of Kent County is created for the area to be known as the Regional Planning District of Kent County."

And, similarly, § 4807 provides that the Commission shall prepare a master plan but it shall have no legal effect within the "corporate limits of any city or town in Kent County" unless it has requested inclusion under § 4802.

These statutes show the intent of the General Assembly that the County generally defer to the wishes of the government of incorporated municipalities in regional planning, and from "the supposition that the several statutes relating to one subject . . . [are] governed by one spirit and policy", DuPont v. Mills, supra, it follows that the same policy extends to the closely related matter of zoning regulation.

■ Considering the permissive language of the enabling act, and the deference to local control over zoning and planning matters expressed in the entire legislative scheme, I find that the County's decision not to extend its regulation to incorporated municipalities in Kent County is not inconsistent with the enabling act.

### D.

I must now consider plaintiffs' argument that the result stated above is unconstitutional. As to that issue, plaintiffs rely upon the theory expressed by the Court in Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405, 88 A.2d 607 (1952):

"Arbitrary [determination] in purported exercise by [a] municipality of [the] power to zone violates the essence of the Constitution and enabling statute and infringes the substance of due process and works as a denial of the equal protection of the laws."

The question of arbitrariness or, conversely, reasonableness of the County's action is crucial to plaintiffs' contention. They concede that if the County has authority to zone less than the entire County, declining to do so is not unconstitutional if there is a logical basis for that decision.

Zoning regulations are an expression of the police power, and the "inquiry is whether, considering the end in view, the measure 'passes the bounds of reason and assumes the character of a merely arbitrary fiat.'" Schmidt v. Bd. of Adjustment of City of Newark, supra, 88 A.2d at

612. See Papaioanu v. Commissioners of Rehoboth, 25 Del.Ch. 327, 20 A.2d 447 (1941).

■ In this regard, defendants are aided by the presumption that a zoning ordinance has not been arbitrarily promulgated, but is a reasonable exercise of the police power. 1 Rathkopf, supra, p. 21–1. Compare Papaioanu v. Commissioners of Rehoboth, supra. That presumption aside, the Kent County zoning ordinance is on its face a carefully prepared document, expressing a comprehensive plan. The crucial question is whether the County's decision to exclude incorporated municipalities from the coverage is arbitrary or unreasonable.

■ Plaintiffs argue that the mere status of incorporation as a municipality is an insufficient basis for distinguishing between those areas which the County regulates and those which it chooses not to. I disagree. The General Assembly has expressed its intention that regulation and planning of the land use in incorporated municipalities be left as far as is possible to local government. The action of Kent County in distinguishing between incorporated municipalities and its unincorporated areas is therefore not arbitrary since it is consistent with that general policy. Nor is the distinction expressed in that policy unreasonable. Local control over the exercise of the police power is the very heart of incorporation as a municipality. When an area incorporates, its citizens are by definition cast in a different relation to the police power than those of the County generally. The General Assembly and the County have merely recognized and deferred to that fundamental difference in relation to the police power.

Having extended to incorporated areas the benefit of local control over the police power, the State may fairly expect and require those areas to attend to their own zoning regulation. In this regard, I note that the Kent County zoning ordinance contains a simple mechanism by which incorporated municipalities may subject

themselves to its jurisdiction in an orderly manner; Art. I, § 2 provides:

"This ordinance . . . may apply to incorporated municipalities, if by appropriate action of its governing body such municipality elects to be included in its application."

It seems to me that the scheme of zoning adopted by the County carefully considered the proper relation between it and incorporated municipalities, particularly as expressed in the total legislative scheme, and provided a careful and reasoned mechanism by which the interests of both governments and their citizens might be respected and coordinated. I therefore find that the County's failure to extend its zoning ordinance to incorporated municipalities without zoning provisions does not constitute arbitrary or unreasonable discrimination, and is therefore not unconstitutional.

■■■ The result is that the zoning ordinance stands as it is written, and the Town of Cheswold is excluded from its jurisdiction. That being so, the A–C classification provided for in Section 4 of the Zoning Code cannot apply to Cheswold because that provision applied only to "property in the jurisdiction of this Ordinance."

\*　　\*　　\*　　\*　　\*　　\*

There is thus simply no zoning ordinance applicable to the Town of Cheswold. And since there are no grounds upon which to base an injunction, plaintiffs' application must be denied.[4]

4. Plaintiffs alleged in their amended complaint that if no zoning exists, the proposed construction would be "unlawful in that it interferes with the property rights of adjoining owners, and the enjoinment of the use of their property, to such an extent as create [sic] an inequitable and unfair condition." But they have not articulated the legal theory upon which that allegation is based, nor have they pursued it in their briefs