**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SELENA E. MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: February 28, 2023
Date Submitted: November 7, 2022

Julian Karpoff
33026 W. Falling Creek Street
Lewes, DE 19958

David C. Hutt
R. Eric Hacker
Morris James, LLP
107 W. Market Street
Georgetown, DE 19947

Vincent G. Robertson
Mark F. Dunkle
Kyle F. Dunkle
Parkowski, Guerke & Swayze, P.A.
19354C Miller Road
Rehoboth Beach, DE 19971

Re:  *Julian Karpoff v. Atlantic Concrete Co., Inc. and Sussex County,*
C.A. No. 2022-0621-SEM

Dear Counsel & Parties:

In this abatement action, a residential landowner challenges his neighbor's industrial activities as unlawful. But the landowner first asserted his claims before Sussex County's Board of Adjustment. The County asks that the landowner be compelled to elect one forum in which to proceed. The neighbor asks that this action be dismissed under *McWane* in favor of the first-filed board proceedings. I find the latter should be granted and thus the former is moot. This is my final report.

## I.     BACKGROUND[1]

Julian Karpoff (the "Plaintiff") owns and resides at 33026 W. Falling Creek Street, in Lewes, Delaware, within Sussex County.[2] The Plaintiff's property is within the Village of Five Points subdivision (the "Subdivision"), which is now home to approximately 600 residential households.[3]

But before the Subdivision, there was Atlantic Concrete Co., Inc. ("Atlantic"). Since around 1970, Atlantic has operated a cement batching business on a 4.97-acre parcel of land adjoining what is now the Subdivision (the "Batching Plant Land").[4] This business predates the zoning ordinance the Plaintiff seeks to enforce in this action and is not challenged.

At issue is a second parcel Atlantic purchased on May 31, 2001 (the "Subject Land").[5] The Subject Land adjoins the Batching Plant Land and what is now the

---

[1] Unless otherwise noted, the facts recited herein are taken from the Complaint. Docket Item ("D.I.") 1. On February 6, 2023, the Plaintiff moved for leave to file an amended complaint to add (1) the Department of Natural Resources and Environmental Control as a defendant and (2) two additional counts. D.I. 59-62. The motion is not fully briefed but I decline to delay issuing this report under the rationale of *Hillblom v. Wilmington Tr. Co.*, 2022 WL 17428978, at *1 (Del. Ch. Dec. 6, 2022) (denying a motion to amend without prejudice because "Court of Chancery Rule 15 does not permit a plaintiff to amend his complaint after he filed his answering brief but before the motion to dismiss is decided").

[2] D.I. 1 ¶ 2.

[3] *Id.* ¶ 7.

[4] *Id.* ¶¶3, 6.

[5] *See id.* ¶ 4.

Subdivision.[6]  Although the Subject Land is zoned AR-1 Agricultural/Residential, from 2001 through 2006, the Subject Land was not used for industrial operations.[7] Next-door, during that time, the Subdivision was being developed; development began in 2003 and construction was completed in or around 2006.[8]

Only after the Subdivision was fully developed was the Subject Land utilized for industrial purposes.  In the summer of 2021, Atlantic transferred parts of its concrete recycling operation to the Subject Land from a property on Ritter Lake Road (the "Ritter Property").[9]  The Ritter Property had been used for Atlantic's concrete recycling operation for around twenty (20) years until around June 2021.[10] "This operation consisted of (1) dumping residual cement, (2) breaking up the resulting concrete with a 'breaker' device, and (3) crushing the resulting pieces of concrete."[11]  But in or around June 2021, the operations at the Ritter Property were

---

[6] *Id.*

[7] D.I. 1 ¶ 6.

[8] *Id.* ¶ 7.

[9] *Id.* ¶ 9.

[10] *Id.* ¶ 8.

[11] *Id.*

deemed a non-conforming use and Atlantic transferred parts (1) and (2) to the Subject Land.[12]

As part of the transferred operation, Atlantic dumps and breaks cement on the Subject Land using a pneumatic breaker device.[13] The pneumatic breaker "emits noise and vibration like a pile driver" and typically commences at 7:00 a.m., continuing through 3:00 p.m., Monday through Friday.[14] The Plaintiff avers these "operations produce substantial and excessive noise and vibration and dust which are disruptive to the normal daily activities of . . . those living in the vicinity, including the Plaintiff, and [are] otherwise noxious and offensive to those living in the vicinity and their health, including the Plaintiff."[15]

The Plaintiff brought these complaints first to the director of Sussex County's Department of Planning and Zoning (the "Director").[16] In a letter dated March 4, 2020, the Plaintiff complained that the industrial activities on the Subject Land were a non-conforming use and that Atlantic's non-conforming use exception for the Batching Plant Land could not extend to the Subject Land because the Subject Land

---

[12] D.I. 1 ¶¶ 8-9.

[13] *Id.* ¶ 9.

[14] *Id.*

[15] *Id.*

[16] *Id.* ¶ 10.

was purchased after the enactment of the applicable zoning ordinance.[17] On April 29, 2022, the Director issued a director's determination finding that Atlantic's use of the Subject Land was a valid expansion of Atlantic's pre-existing use of the Batching Plant Land.[18]

On May 26, 2022, the Plaintiff appealed the Director's determination to Sussex County's Board of Adjustment (the "Board").[19] The Board was prepared to hear the appeal at a hearing scheduled for September 2022, but the appeal was stayed until the end of November 2022 (the proceedings before the Board will be referred to herein as the "Administrative Proceedings").[20]

Unsatisfied with the Administrative Proceedings, the Plaintiff filed his complaint before this Court on July 15, 2022.[21] The complaint seeks abatement of the alleged unlawful use of the Subject Land and declaratory relief that the use of

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] D.I. 12, Ex. B. During oral argument, counsel for Atlantic provided further details on the current state of the appeal. The Plaintiff has filed motions to recuse members of the Board, and there has been continued back and forth between the Plaintiff and Board's attorney. D.I. 58. The Plaintiff also provided the Board's attorney with a proposed motion for a stay, and the Board's attorney agreed to a three-month stay, ending in November 2022. *Id.* It is unknown if the Administrative Proceedings have progressed since.

[21] D.I. 1.

the Subject Land is unlawful.[22]  In addition to Atlantic, the Plaintiff named Sussex

County as a defendant (together with Atlantic, the "Defendants").[23]

On August 29, 2022, Sussex County filed a motion to compel the Plaintiff's

election of a single forum: this Court or the Board.[24]  Atlantic went a step further,

filing a motion to dismiss this litigation for *forum non conveniens* in favor of the

prior-filed Administrative Proceedings.[25]  While these motions were being briefed,

the parties filed various discovery motions.[26]  On November 7, 2022, I heard

telephonic oral argument on all outstanding motions.[27]  I ruled on the outstanding

discovery motions[28] and took the motion to compel election of a single forum and

motion to dismiss under advisement.[29]

## II.  ANALYSIS

Both motions before me seek to restrict adjudication of this matter to a single

forum.  Atlantic's motion to dismiss goes further than Sussex County's motion to

---

[22] *Id.*

[23] *Id.*

[24] D.I. 10.

[25] D.I. 11.

[26] D.I. 24, 34, 38, 42.

[27] D.I. 58.

[28] D.I. 52-55.

[29] D.I. 56, 57.

compel by arguing this Court should abstain in favor of the Administrative Proceedings. I agree and I find that Atlantic's motion to dismiss should be granted, as explained below, rendering Sussex County's motion moot.

> **A.** **The Administrative Proceedings are a prior action under the first *Cryo-Maid* factor, triggering *McWane*.**

As explained most recently by Vice Chancellor Laster, "a motion invoking the doctrine of *forum non conveniens* proceeds under Rule 12(b)(3) and seeks dismissal on grounds of improper venue."[30] Under this lens, "the court is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset."[31] To this expanded record, the Court applies the so-called "*Cryo-Maid*" factors."[32] Those factors are:

> (1) the existence of other litigation involving substantially similar parties or subject matter;
> (2) whether the controversy depends upon a question of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;
> (3) the relative ease of access to proof;
> (4) the availability of compulsory process for witnesses;
> [(5) the possibility of a view of the premises;

---

[30] *Harris v. Harris*, 2023 WL 355179, at *6 (Del. Ch. Jan. 23, 2023) (citing *Lefkowitz v. HWF Hldgs., LLC*, 2009 WL 3806299, at *3 (Del. Ch. Nov. 13, 2009)).

[31] *Id.* at *6–8 (Del. Ch. Jan. 23, 2023) (internal quotations omitted) (quoting *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *5 (Del. Ch. Oct. 19, 2000)).

[32] *See Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964).

(6)] any other matters that would affect the conduct of the litigation and the expeditious and economic administration of justice.[33]

"The first *Cryo-Maid* factor asks whether there is (i) an earlier-filed action, (ii) between the same or substantially similar parties, (iii) addressing the same or substantially similar subject matter, (iv) pending in a court capable of addressing the matter in a just way."[34] If the answer to each sub part is "yes", then the presumption under *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970) applies.[35] Under *McWane*, "the court will dismiss or stay the Delaware action in deference to the [p]rior [a]ction unless the *Cryo-Maid* factors weigh heavily in favor of allowing the Delaware action to proceed."[36]

The Plaintiff argues that "*McWane*'s presumption of dismissal"[37] should not apply because the Administrative Proceedings are in the State of Delaware and are,

---

[33] *Harris*, 2023 WL 355179, at *7. In *Harris*, Vice Chancellor Laster omitted the view-of-the-premises factor, because it was irrelevant to the claims before him. *Id.* at n.5.

[34] *Id.*

[35] *Id.*

[36] *Id.* (citing *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1037 (Del. 2017)). "[T]he calculus only will favor denying the motion and permitting the Delaware action to move forward if the Delaware plaintiff has invoked a specialized statutory proceeding designed to address a particular issue or if Delaware otherwise has a particularly strong interest in the dispute." *Id.* (citing *Focus Fin. P'rs, LLC v. Holsopple*, 250 A.3d 939, 953–54, 956 (Del. Ch. 2020)).

[37] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d 93, 101 (Del. 2021). *But see Riordan Ltd. v. IVN Consulting, LLC*, 2021 WL 2879786, at *4 (Del. Ch. July 9, 2021) (finding dismissal inappropriate).

thus, not "an earlier-filed action." But this argument imposes a new geographical restriction not evident in *McWane*, *Cryo-Maid*, or their progeny. Those cases, rather, focus on whether there is a parallel action, which implicates the principles in favor of judicial economy and against forum shopping and inconsistent verdicts. Whether that action is a formal court proceeding or in a different state, is not dispositive.

The Delaware Supreme Court's decision in *LG Electronics, Inc. v. InterDigital Communications, Inc.* is instructive.[38] In *LG Electronics*, the Delaware Supreme Court affirmed this Court's finding that a first-filed arbitration was a prior action triggering *McWane*. The Court explained:

> [T]here is no principled reason to distinguish an arbitration proceeding from other first-filed actions. . . . [T]he principles underlying *McWane* apply equally when the first-filed action is an arbitration: the desire to avoid the "wasteful duplication of time, effort, and expense that occurs when judges, lawyers, parties, and witnesses are simultaneously engaged in the adjudication of the same cause of action in two courts," and "the possibility of inconsistent and conflicting rulings and judgments and an unseemly race by each party to trial and judgment in the forum of its choice."[39]

As the Plaintiff concedes, nowhere in its analysis did the court in *LG Electronics* discuss where the arbitration was proceeding.[40] In context, it is not difficult to

---

[38] 114 A.3d 1246 (Del. 2015).

[39] *Id.* at 1252.

[40] D.I. 20, p. 7, n. 8.

understand why; the physical location of the arbitration was not material to the court's decision. The court focused on the "principles underlying *McWane*" and concluded that those principles weighed in favor of treating the first-filed arbitration as a first-filed action. In the decision affirmed, Vice Chancellor Laster found persuasive that arbitrations have been treated as prior actions in other contexts, such as for purposes of issue and claim preclusion.[41]

The same is true here. The Administrative Proceedings were initiated first and involve the same parties and issues as this action. Absent a stay or dismissal, this action and the Administrative Proceedings would proceed in parallel; the risk of duplicative efforts, inconsistent verdicts, and race to a decision all favor application of *McWane*. And, like arbitrations, administrative decisions are treated as having preclusive effect for purposes of issue and claim preclusion.[42]

Taking this back to the first *Cryo-Maid* factor, I find the Administrative Proceedings are an earlier-filed action, between the same parties, and addressing the

---

[41] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135, 138-39 (Del. Ch. 2014), *aff'd*, 114 A.3d 1246 (Del. 2015).

[42] *See Betts v. Townsends, Inc.*, 765 A.2d 531, 534 (Del. 2000) ("Under the doctrine of *res judicata*, a party is foreclosed from bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties. Similarly, where a court or administrative agency has decided an issue of fact necessary to its decision, the doctrine of collateral estoppel precludes relitigation of that issue in a subsequent suit or hearing concerning a different claim or cause of action involving a party to the first case.") (citations omitted).

same subject matter. One question remains: is the administrative body "capable of addressing the matter in a just way."[43] "Rendering justice entails accurately applying controlling law as well as ensuring that all parties necessary to a complete resolution are joined (or can be joined by service of process) in a competing action."[44] I find the Board is capable of rendering justice.[45]

The Board is well-poised to analyze and address the Sussex County zoning ordinances.[46] And the Board, thus far, has acted promptly to do so.[47] The delay in the Administrative Proceedings is, admittedly, attributable to the Plaintiff, who requested a stay. There is nothing to suggest the Board cannot or will not move promptly to address the matter before it, subject to its rules of procedure.[48] Although

---

[43] *Harris*, 2023 WL 355179, at *7.

[44] *Brookstone Partners Acquisition XVI, LLC v. Tanus*, 2012 WL 5868902, at *6 (Del. Ch. Nov. 20, 2012).

[45] Atlantic argues that the Plaintiff has "conceded that the Board is competent to adjudicate the matter" by first selecting the Board as his forum; I nonetheless address this factor on its merits. *But see In re Diamond Foods, Inc. Derivative Litig.*, 2013 WL 755673, at *4 (Del. Ch. Feb. 28, 2013) (finding a plaintiff "conced[ed] that a non-Delaware court could competently adjudicate the claim" by first filing in a different jurisdiction).

[46] *See* Sussex Cty. C. § 115-208.

[47] *See, e.g.*, D.I. 19, Ex. 2 (demonstrating that the Board responded to the Plaintiff's supplemental motion one day after it was submitted).

[48] RULES OF PROCEDURE OF THE BOARD OF ADJUSTMENT OF SUSSEX COUNTY, DELAWARE, https://sussexcountyde.gov/sites/default/files/PDFs/BOA_Rules_of_Procedure.pdf (last visited Feb. 28, 2023).

I appreciate the Plaintiff's concerns about those rules, I find those concerns are more appropriately weighed in the remaining *Cryo-Maid* factors; they do not, in my view, go toward whether the Board is "capable of addressing the matter in a just way."[49]

The first *Cryo-Maid* factor has been met and the *McWane* presumption applies.[50]

---

[49] *Harris*, 2023 WL 355179, at *7. Under 9 *Del. C.* § 6916, the Board has jurisdiction to hear appeals from the decision of any administrative officer. Further, under 9 *Del. C.* § 6915, the County was charged with providing "general rules to govern the organization, procedure and jurisdiction of the Board of Adjustment[.]" To conclude that provisions in those rules render the Board incapable of addressing a matter otherwise properly before it in a just way would not be appropriate on the record before me.

[50] The Plaintiff argues that the principles underlying *McWane* do not apply because the Plaintiff instituted both actions. He emphasizes the following quote from *McWane*: "a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing[.]" *McWane*, 263 A.2d at 283. But such is just one consideration of the *McWane* analysis, which is not dispositive. For example, in *LG Electronics*, the same party who demanded arbitration, filed an action with the Court of Chancery, which was dismissed in favor of the first-filed arbitration under *McWane*. *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d at 1252. *See also Luchi v. Luchi*, 2020 WL 1274879, at *3 (Del. Ch. Mar. 17, 2020), *adopted* (Del. Ch. 2020) (applying *McWane* to actions filed by the same party); *In re Diamond Foods, Inc. Derivative Litig.*, 2013 WL 755673, at *4 (dismissing parallel litigation filed by what the Court termed "Dual Forum Plaintiffs" under *McWane*).

> **B.** **The remaining *Cryo-Maid* factors do not weigh heavily in favor of this action.**

Having found the *McWane* presumption applies, I must now return to the remaining *Cryo-Maid* factors. If those factors do not weigh heavily in favor of allowing this action to proceed, it should be stayed or dismissed.

Factor (2) and (3) ask "whether the controversy depends upon a question of Delaware law which the courts of this State more properly should decide than those of another jurisdiction" and require that I look to "the relative ease of access to proof[.]"[51] These factors are in equipoise—both actions are pending within this State, where the Subject Land is located.

Factor (4) looks to "the availability of compulsory process for witnesses;"[52] whether either forum "can compel the relevant witnesses to appear for discovery and trial."[53] The Plaintiff argues this factor favors this action because the Board's "rules do not provide for compulsory process, direct cross-examination of adverse witnesses, discovery, nor pleading by anyone other than the appellant."[54] The

---

[51] *Harris*, 2023 WL 355179, at *7.

[52] *Id.*

[53] *Holsopple*, 250 A.3d at 974.

[54] D.I. 20, p. 16. These limitations are what compelled the Plaintiff to file this action. *See* D.I. 19 ("The Plaintiff brought this action because of the procedural inadequacies encountered in the BOA appeal.").

Plaintiff appears correct—although the Plaintiff "will be afforded the opportunity to present testimony and evidence supporting" his appeal to the Board under Rule 15.3,[55] I can find nothing in the Board's rules expressly permitting discovery or the subpoena process.[56] Further, Rule 14.6 provides: "No cross-examination of witnesses or applicants will be permitted. All questions for others should be directed to the Board and the Board may direct the question to the appropriate person."[57] Thus, I find this factor favors this action.

Factor (5) inquires into "the possibility of the view of the premises." The Plaintiff argues that this factor favors this action because the Administrative Proceedings do not contemplate a view of the premises. Conversely, Court of Chancery Rule 34 sets forth a procedure for entry upon land for inspection and other purposes. But the mere availability of a discovery tool does not tilt the scale. Because both proceedings are in the same state as the Subject Land and there appears to be no dispute that the Subject Land is being used for industrial purposes such that

---

[55] Sussex Cty. Bd. of Adjustment R. 15.3.

[56] *See also* D.I. 19, Ex. 2, p.9 (reflecting the Board's view that "conducting pre-hearing discovery would be inconsistent with the process and procedures in [the Board's] rules and is therefore not permitted").

[57] Sussex Cty. Bd. of Adjustment R. 14.6.

inspection would be essential to proving the Plaintiff's claims, I find this factor is neutral.[58]

Finally, factor (6) looks to "any other matters that would affect the conduct of the litigation and the expeditious and economic administration of justice."[59] This factor "is a catch-all factor that looks to any other matters that would affect the conduct of the litigation and the expeditious and economic administration of justice."[60] "Under this prong, Delaware courts have examined a wide array of considerations[,] including judicial economy, the motives of the parties filing suit in the respective jurisdictions, and public interest."[61] "It authorizes a trial court to take into account the need to control its own docket, manage its affairs, achieve the orderly disposition of its business, and promote the efficient use of judicial resources."[62]

---

[58] *See, e.g.*, *VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *9 (Del. Ch. Apr. 28, 2014) (finding this factor neutral given the availability of video recording); *IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *10 (Del. Ch. Nov. 2, 2000) (same).

[59] *Harris*, 2023 WL 355179, at *7.

[60] *Id.* at *13 (quoting *Holsopple*, 250 A.3d at 974) (quotation marks omitted).

[61] *Pipal Tech Ventures Priv. Ltd. v. MoEngage, Inc.*, 2015 WL 9257869, at *9 (Del. Ch. Dec. 17, 2015).

[62] *Holsopple*, 250 A.3d at 974–75.

Both sides argue this factor favors them. The Plaintiff's arguments arise from his abatement request; first, that the request distinguishes this action from the Administrative Proceedings and second, that the abatement statute provides for, or contemplates, parallel actions. Atlantic urges me to consider the policy considerations against forum shopping. I address these arguments in turn.

First, I appreciate that the abatement request lies solely before this Court. But, like Vice Chancellor Laster in *LG Electronics*, I find this request for injunctive relief does not move the needle in favor of permitting parallel actions. In *LG Electronics*, the non-moving party argued against dismissal under *McWane* because of its claim in this Court for injunctive relief to bar future contractual breaches. But Vice Chancellor Laster found, and the Delaware Supreme Court affirmed, that the claim was not yet ripe—the injunction would only issue if there was a pattern of conduct supporting a reasonable apprehension of future breaches.[63]

I hold similarly here. The injunctive relief requested here is an abatement of the non-conforming use. But, before that injunctive relief can be granted, there must be a determination that Atlantic's use is non-conforming. That question is currently pending before the Board, the first forum selected by the Plaintiff. If the Board finds

---

[63] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d at 145.

the use non-conforming, it may direct further enforcement and order appropriate relief. It would also be unreasonable, at this time, to infer that Atlantic would willfully ignore such finding and enforcement efforts, such that there is a reasonable apprehension of the need for injunctive relief.[64]

The Plaintiff also argues that 9 *Del. C.* § 6919(d) contemplates parallel actions. He reasons, because the statute permits an action for abatement "in addition to other remedies provided by law,"[65] a proceeding before the Board is not exclusive of a judicial remedy and both actions can continue. In support, the Plaintiff points to *Scarborough v. Mayor & Council of Town of Cheswold*, 303 A.2d 701 (Del. Ch. 1973) and *Vivari v. Francis*, 1991 WL 79472 (Del. Ch. May 6, 1991).

---

[64] As argued by Sussex County in support of its motion, "the use violation alleged by Plaintiff would become self-abating under Sussex County Code if Plaintiff prevails before the Board." D.I. 28, p.3. I also find Vice Chancellor Zurn's recent decision in *Delta Eta Corp. v. City of Newark*, C.A. No. 2021-1106-MTZ, D.I. 45 analogous. Therein, Vice Chancellor Zurn dismissed claims challenging a zoning decision for lack of subject matter jurisdiction, finding the "request for an injunction falls short of invoking this Court's equitable jurisdiction both because it has not sufficiently pled the need for an injunction, and because a writ of certiorari provides an adequate remedy at law." *Id.* The Court rejected the argument that "the Court of Chancery and the Superior Court share concurrent jurisdiction over zoning disputes, and that a plaintiff can choose to litigate in this Court through the mere request for injunctive relief." *Id.* (citations omitted). Rather, the Court held the plaintiff to its burden of pleading "a reasonable apprehension of future harm." *Id.* (citations omitted). Absent such, the plaintiff had an adequate remedy at law: to challenge the administrative decision in the Superior Court. *Id.*

[65] 9 *Del. C.* § 6919(d).

In *Scarborough*, Chancellor Duffy addressed a homeowner challenge to a county ordinance. The homeowner sought injunctive relief to prevent construction the homeowner alleged was in violation of the ordinance.[66] Relying on Kent County's version of 9 *Del. C.* § 6919(d), the Chancellor found the homeowner was not required to first appeal to the county's board of adjustment.[67] He reasoned the administrative remedy was not exclusive, nor "substantially equivalent" to the injunctive relief requested.[68] Thus, the homeowner did not fail to exhaust administrative remedies and the action filed in this Court could proceed.[69] Likewise, this Court, in *Vivari*, held that the Rehoboth Beach Zoning Ordinance (as defined therein), did "not limit plaintiffs' remedy to an appeal to the Board of Adjustment."[70]

These cases are inapposite to the issue at hand. The Plaintiff chose to appeal to the Board and that action remains pending. The question is not whether he was required to do so but whether he should be permitted to maintain and actively litigate both that appeal and this action. I find he should not, after my analysis of the *Cryo-Maid* factors, applying the *McWane* presumption. The Plaintiff's attempt to use the

---

[66] *Scarborough*, 303 A.2d at 703-04.

[67] *Id.* at 704.

[68] *Id.*

[69] *Id.*

[70] *Vivari v. Francis*, 1991 WL 79472, at *5.

remedy language in 9 *Del. C.* § 6919(d) and the doctrine of exhaustion of administrative remedies to supplant the *forum non conveniens* analysis is unpersuasive.

Moving to Atlantic's arguments, under this catch-all, Atlantic implores me to consider the "why"; why the Plaintiff brought this action and the related policy implications. As recognized by the Delaware Supreme Court in *Lisa, S.A. v. Mayorga*, *forum non conveniens* "discourage[s] forum shopping and promote[s] the orderly administration of justice by recognizing the value of confining litigation to one jurisdiction, whenever that is both possible and practical."[71] Here, the Plaintiff admits that he filed this action due to what he saw as "procedural inadequacies" in the Administrative Proceedings related to discovery and trial procedure. But the Plaintiff chose his forum and should be compelled to litigate therein.

Overall, I find this final factor favors the Administrative Proceedings. The Board was ready to proceed and has devoted resources to the matter before it.[72] Although the Plaintiff appears to distrust or have concerns about the Board's ability to decide the dispute neutrally, there are avenues for him to address those concerns. Specifically, under 9 *Del. C.* § 6918(a), "[a]ny persons jointly or severally aggrieved

---

[71] 993 A.2d 1042, 1047 (Del. 2010) (citations and quotation marks omitted).

[72] *See, e.g.*, D.I. 19, Ex. 2.

by a decision of the Board . . . may present to the Superior Court in and for Sussex County, a petition duly verified, setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality." This avenue weighs in favor of requiring the Plaintiff to litigate in his first chosen forum.

\*     \*     \*

Altogether, I find the remaining *Cryo-Maid* factors do not weigh heavily in favor of this action. Most factors were neutral, although factor (4) weighed in favor and factor (6) weighed against. Although "[t]he final factor will seldom, in isolation, be dispositive of whether dismissal on the grounds of *forum non conveniens* is warranted[,]"[73] the *McWane* presumption requires heavy weight in favor of this second filed action for the Plaintiff to avoid dismissal or a stay. The considerations under factor (4) are insufficient to heavily outweigh those under factor (6). Thus, this action should be dismissed or stayed in favor of the Administrative Proceedings.

### C.     This action should be dismissed.

In *GXP Capital, LLC v. Argonaut Manufacturing Services, Inc.*, the Delaware Supreme Court carefully examined the presumptions that apply to a *forum non conveniens* analysis depending on the procedural posture.[74] In cases like this, where

---

[73] *Harris*, 2023 WL 355179, at \*13 (citations and quotation marks omitted).

[74] 253 A.3d 93 (Del. 2021).

there is a first filed action, the Delaware Supreme Court reiterated "*McWane*'s presumption of dismissal."[75] This Court is, however, within its discretion is stay, rather than dismiss. When it is "impossible to predict with certainty the course of earlier-filed litigation in another jurisdiction" a stay may be more appropriate.[76] This Court will also stay when the parties' dispute may not be fully resolved in the prior action.[77] Such would ensure the non-moving party is "not deprived of a forum."[78]

These considerations are not present here. The Administrative Proceedings are functionally identical with the claims in this action, as already explained. The outcome of the Administrative Proceedings may then be appealed to the Delaware Superior Court under 9 *Del. C.* § 6918. This provides an adequate remedy at law for the Plaintiff.[79] For these reasons, I find this case should be dismissed in favor of the Administrative Proceedings. This dismissal should be without prejudice.[80]

---

[75] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d at 101. *But see Riordan Ltd. v. IVN Consulting, LLC*, 2021 WL 2879786, at *4 (Del. Ch. July 9, 2021) (finding dismissal inappropriate).

[76] *Schnell v. Porta Sys. Corp.*, 1994 WL 148276, at *6 (Del. Ch. Apr. 12, 1994).

[77] *See, e.g.*, *USX Corp. v. U.S. Denro Steels, Inc.*, 2001 WL 1269329, at *2 (Del. Ch. June 29, 2001).

[78] *Hurst v. Gen. Dynamics Corp.*, 583 A.2d 1334, 1341 (Del. Ch. 1990).

[79] *See Delta Eta Corp. v. City of Newark*, C.A. No. 2021-1106-MTZ, D.I. 45.

[80] *See Harris*, 2023 WL 115541, at *8 (recognizing that dismissal for *forum non conveniens* is without prejudice); *IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *12 (accord).

## III.   CONCLUSION

For the above reasons, I find that the motion to dismiss should be granted and the motion to compel election of a single forum should be denied as moot. Under Court of Chancery Rule 12(b)(3), this action should be dismissed for *forum non conveniens* without prejudice and in favor of the first-filed Administrative Proceedings. This is my final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery